STATE *v.* BATES.

(In Banc. Jan. 2, 1940.)

[192 So. 832. No. 33608.]

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**D. B. Holmes, Jr.,** of Meridian, for appellee.

**Ethridge, J.,** delivered the opinion of the court.

Marvin R. Bates and W. H. Mitchell were indicted by the grand jury at the August, 1938, term of the Circuit Court of Lauderdale county, for promoting and carrying on "a lottery for lawful money of the United States of America to be drawn and adventured for, and did then and there, by means of said lottery . . . so put up, carried on, promoted and conducted unlawfully, willfully and feloniously dispose of lawful money of the United States, and in amounts and values to the grand jury unknown," etc. The defendant, Bates moved to quash the indictment so found, on the ground that he was compelled by the action of the court in issuing a subpoena duces tecum, to produce books, papers, checks etc., used in connection with his business, said subpoena duces tecum being served upon his secretary and bookkeeper, Miss Polly Nicks; said books, papers, etc., being used in obtaining evidence against him in connection with the lottery business conducted by him.

The petition for the subpoena duces tecum was presented to the Circuit Court, and thereupon its issuance was ordered by the Circuit Judge, for the use of the grand jury; the petition reading: "Now comes the State of Mississippi . . . and would show unto the court that it is advised and verily believes that Miss Polly Nicks has in her possession and custody certain cancelled checks, books of account and certain records showing the connection of the said Marvin Bates with a certain lottery . . ."; and that same were material to certain investigations being conducted by the grand jury in

August, 1938. "Wherefore, it is prayed that a subpoena duces tecum issue to the said Miss Polly Nicks requiring her to bring and have with her said cancelled checks," etc., of said Marvin Bates.

The subpoena duces tecum was issued in accordance with the prayer of the petition, and process was turned over to the sheriff, who served same upon Miss Nicks, and went with her to the office of Bates, where the books, papers, records and checks connected with the business were kept. Miss Nicks called Bates, advising him of the process having been served upon her, and he thereupon came to the office. In his presence the books were taken from the office and carried to the grand jury room, for use by the grand jury.

After the finding of the indictment by the grand jury, the case was transferred to the county court for trial; and there another petition for subpoena duces tecum was issued, to have the said books and papers produced in the county court.

Thereupon the defendant, Bates, filed a motion to quash the indictment, setting up the issuance of the subpoena duces tecum, and service thereof, and the production of his private books and papers before the grand jury; stating that they were subsequently examined and inspected by the grand jury without his permission; by reason thereof the indictment so found and returned was illegal, and the grand jury was without authority to cause the production of said books and papers; and that by virtue of section 1286, Code of 1930, the defendants were immune to such production of books, etc., and to the indictment; and asked that the indictment in this cause be quashed, and the defendant discharged.

Upon this motion to quash issue was taken, and it was shown in evidence that the subpoena duces tecum was isused upon the petition of the grand jury, through the district attorney, to the Circuit Court; and that the books were produced by the sheriff, who went with Miss Nicks to the office, where he took charge of the books, etc.,

and carried them to the grand jury room—the sheriff actually taking the documents, but doing so for the accommodation of Miss Nicks.

The county court sustained the motion to quash; and from this judgment the State appeals.

Section 1286, Code of 1930, reads as follows: "No person shall be excused from attending and testifying before a grand jury, or before any court, or in any cause or proceeding, criminal or otherwise based upon or growing out of any alleged violation of the provisions of law as to gambling or gaming, or as to operating a bucket-shop, or the dealing in contracts commonly called 'futures,' of which he shall have knowledge, on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subject to any penalty for or on account of any transaction, matter or thing, concerning which he may testify or produce evidence, documentary or otherwise, before the grand jury or any court; provided, that no person so testifying shall be exempt from prosecution or punishment for perjury in so testifying. Any person who shall neglect or refuse to so attend or testify, or to answer any lawful inquiry, or to produce books or other documentary evidence, if in his power to do so, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than one hundred dollars or more than five hundred dollars, or by imprisonment for not more than ninety days, or by both such fine and imprisonment."

There are two sections pertaining to witnesses testifying before the legislature, and the immunity given such witnesses, the import being substantially the same as in section 1286, although clothed in different language; these are sections 1287 and 5340. There is also a section under the chapter on intoxicating liquors, being section 1991, giving immunity to witnesses testifying before a grand jury, or before any court or in any proceeding,

criminal or otherwise, based on or growing out of any alleged violation of this chapter, or any amendment thereof, on the ground and for the reason that testimony for evidence, documentary or otherwise, may tend to incriminate him or subject him to penalty or forfeiture. The immunity given under this section has been considered in a number of cases, which will hereafter be referred to. The immunity granted under section 5340 has also been construed by this Court; and the authorities under these other sections are pertinent to the questions now before us for consideration.

Section 1286, Code of 1930, was enacted with the idea that a grant of complete immunity was necessary to the compelling a person to testify or to produce his books, papers and effects, which might have a tendency to incriminate him, or to furnish a link in a chain of evidence that would establish crime on his part. The law with reference to that subject is well settled in numerous cases in the federal Supreme Court, and in this state. See Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746; Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652; Silverthorne Lbr. Co. v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319, 24 A. L. R. 1426; Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647; Arndstein v. McCarthy, 254 U. S. 71, 41 S. Ct. 26, 65 L. Ed. 138; Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654; State v. Billups, 179 Miss. 352, 174 So. 50; Tucker v. State, 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377; Owens v. State, 133 Miss. 753, 98 So. 233; McCarthy v. Arndstein, 266 U. S. 34, 45 S. Ct. 16, 69 L. Ed. 158.

With these authorities in view, let us examine the provisions of section 1286. It will be noted that after the provision that no person shall be excused from testifying before a grand jury, or before any court, or in any cause or preceeding, criminal or otherwise, based on, or growing out of, any violation of provisions of law in regard to gambling or operating a bucket shop, or dealing in.

futures, of which he shall have knowledge, etc., on the ground that it will incriminate him, it continues, "But no person shall be prosecuted or subject to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify or produce evidence, documentary or otherwise, before the grand jury or any court;" and providing as the only execution to prosecution is for perjury, or false testimony in such case.

The question here involved goes to the power of the grand jury to return an indictment in cases where the evidence is so obtained, and it is not a question of sufficiency, or competency, or irrelevancy, of evidence before the grand jury, considered as such. The section prohibits the grand jury, after obtaining such evidence, from instituting a prosecution in connection with the matter concerning the witnesses or the documents produced before it. It is the legality of the indictment which is involved, and not the competency or sufficiency of the evidence before the grand jury; which, of course, is not required to be learned in the law, or to conduct its proceedings strictly in accordance with the rules of evidence, or to be governed by strict rules of procedure, as is required in trials in court; and the court will not examine the proceedings of the grand jury merely to see whether they acted on competent evidence, or whether it was legal; or in regard to the relevancy or legality of the testimony given before them. But the legality of their action presents a different question. If they had no legal power to return the indictment, then the court, on proper proceedings, may inquire into the matter, and afford to the party affected the necessary remedy to protect him against illegal action. It is a question of the power of the grand jury under the statute, and not of the means by which the evidence was obtained.

It is recognized in the Code, section 1207 and required, that all objections to an indictment for any defect dehors the face thereof, presenting an issue to be tried by the

court, shall be taken by motion to quash the indictment, and not otherwise, within the time allowed for a demurrer, and with the right to amend as provided by the preceding section, which provides that all objections on the face of the indictment shall be taken by demurrer. Grand juries, like others exercising public authority, are limited in their powers, and cannot act except in accordance with law.

The indictment herein being based on proceedings under the writ of duces tecum, confers immunity upon the appellee Bates, and the motion to quash is an appropriate remedy. See State v. Bramlett (Miss.), 47 So. 433; section 1207, Code 1930.

. Immunity has been sustained by other methods of procedure, and it appears that the question may be raised at any time, even by motion in arrest of judgment. The method by which the plea of immunity may be asserted will be referred to later on in this opinion.

. In State v. Billups, 179 Miss. 352, 174 So. 50, it is held that the word "evidence", within the constitutional provision that defendant in a criminal prosecution shall not be compelled to give evidence against himself, means evidence by the defendant out of court as well as in court; and not only evidence extorted from him by force outside of court, but also evidence obtained from books and records brought in by process of court. In that case the defendant, Billups, was indicted on evidence obtained from him under the provisions of section 5340, Code of 1930, requiring witnesses to testify before a legislative committee, and providing immunity from prosecution if he did so testify. The substance of section 5340 does not differ materially from the present statute, and the rules applied in State v. Billups, supra, also apply here.

In McCarthy v. Arndstein, supra, 266 U. S. 34, 45 S. Ct. 16, 69 L. Ed. 158, it is held that the provision of the federal bankruptcy law that the testimony of a witness should not be used against him on trial was insufficient, because it does not give complete immunity, and that such

was required. At page 40 of 266 U. S., 45 S. Ct. at page 17, at page 161 of the L. Ed., the Court said: ''The government insists, broadly, that the constitutional privilege against self-incrimination does not apply in any civil proceeding. The contrary must be accepted as settled. The privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it. The privilege protects a mere witness as fully as it does one who is also a party defendant. It protects, likewise, the owner of goods which may be forfeited in a penal proceeding.'' Citing Counselman v. Hitchcock, 142 U. S. 547, 563, 12 S. Ct. 195, 35 L. Ed. 1110, 1114, 3 Inters. Com. R. 816. Further in the opinion it is said: ''When the bankrupt appears before a commissioner under this section, he comes, like any other person, merely to testify. In that connection he may, like any other witness, assert the constitutional privilege; because the present statute fails to afford complete immunity from prosecution. If Congress should hereafter conclude that a full disclosure of the bankrupt estate by the witnesses is of greater importance than the possibility of punishing them for some crime in the past, it can, as in other cases, confer the power of unrestricted examination by providing complete immunity. Compare Brown v. Walker, 161 U. S. 591, 16 S. Ct. 644, 40 L. Ed. 819 [5 Inters. Com. R. 369]; Glickstein v. U. S., 222 U. S. 139, 142, 32 S. Ct. 71, 56 L. Ed. 128 [130]; Ensign v. Penn. 227 U. S. 592, 33 S. Ct. 321, 57 L. Ed. 658.''

It has been said that this immunity does not here apply, because the subpoena duces tecum was issued and served upon the secretary of Bates, the appellee. As above stated, it was issued and served upon Miss Nicks, the sheriff who went to the office with her, to which place she called Bates, and the books were taken therefrom—these books being the property of Bates, not of Miss Nicks,

who was merely the servant or agent of Bates, employed to perform his work. The books were in his office, in his legal custody. Under this state of facts, the distinction between Miss Nicks and Bates cannot be maintained here.

In Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 379, 50 L. Ed. 652, the books were the property of a corporation, and the officer of the corporation refused to produce them, on the ground that they would incriminate him, and also that they would tend to incriminate the corporation. The Court held that the books were not the books of the party who was commanded to produce them, and consequently that he could not assert immunity for himself, since the books were not his; and that a corporation was not entitled to the protection of immunity, because subject to the visitatorial power of the state; and, furthermore, that the party could not assert the privilege for the corporation. The Court also drew the distinction between the rights of an individual and of a corporation, in the matter of immunity. In the opinion the Court used this language: ''Conceding that the witness was an officer of the corporation under investigation, and that he was entitled to assert the rights of the corporation with respect to the production of its books and papers, we are of the opinion that there is a clear distinction in this particular between an individual and a corporation, and that the latter has no right to refuse to submit its books and papers for an examination at the suit of the State. The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the state or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend to incriminate him. He owes no such duty to the state, since he receives nothing therefrom, beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the state, and can only be taken from him by due process

of law, and in accordance with the Constitution. Among his rights are a refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under a warrant of the law. He owes nothing to the public so long as he does not trespass upon their rights."

This language was approved and repeated in Wilson v. United States, 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558, the quotation appearing at page 545 of the Supreme Court Reporter.

In the case before us the party affected is an individual, and not a corporation; and in order to use either his own testimony, or that of his books and papers, against him, complete immunity must be given. The Constitution is a living law protecting human rights, not a mere rhetorical bauble to adorn an afterdinner speech or a Fourth of July oration. The right of the defendant to the constitutional protection extends to his office, as well as to his residence. Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374; Falkner v. State, 134 Miss. 253, 98 So. 691.

The public interest in enforcing the laws against crime, and in applying civil remedies in many cases, exceeds in importance to the community the benefit that would flow from the conviction of a particular defendant of crime. The immunity statute, section 1286, Code of 1930, is remedial in its nature, and should be liberally construed in the giving of complete immunity from prosecution to a person whose constitutional rights may be affected. The Constitution itself is to be liberally construed in favor of the citizen; but the immunity is from prosecution; and the fact that the testimony may tend to embarrass him in his personal relations, and in his reputation, does not prevent the state from compelling his testimony when he is completely shielded from criminal prosecution, if such testimony is necessary to the public good.

There are instances where many persons are engaged in crime, or in the conduct of criminal or illegal business,

punishable by fine and imprisonment, or by penal fines or assessments, where it is often desirable, if not necessary, to secure the evidence of one of the defendants, in order to punish the others, and destroy the illegal business in which they are engaged; and the legislature had in mind the doing of this in passing these immunity statutes; leaving to the discretion of the state prosecuting powers the determination of the question whether the giving of immunity to the particular person was for the public good, instead of prosecuting him as a criminal, with the possibility of acquittal.

Many authorities other than those cited could be produced, but the above is deemed sufficient to show the correctness of the judgment of the court below. The question of immunity has been raised in a number of cases, and the right thereto has been established by various methods of procedure. The Court has uniformly sustained them where the state has procured evidence from a person, or from his books, papers, etc. See Lucas v. State, 130 Miss. 8, 93 So. 437, the opinion being written by the Chief Justice, the question of immunity there being raised by special plea setting up the immunity, which was sustained. In Hosey v. State, 136 Miss. 5, 100 So. 577, the question of immunity was raised by plea in bar. In Triplett v. State, 136 Miss. 320, 101 So. 501, in the opinion rendered by Justice Sykes the plea of immunity was sustained. In Sudduth v. State, 136 Miss. 742, 101 So. 711, the question of the defendant's immunity was raised by motion and arrest of judgment. The opinion was written by Justice Cook. In State v. White, 140 Miss. 245, 105 So. 500, immunity was sustained. And in Thornton v. State, 143 Miss. 262, 108 So. 709, the question of immunity was raised by plea specially setting forth the immunity, which was sustained.

As stated above, the case of State v. Bramlett, Miss. 47 So. 433, not reported in state reports, held that the proper remedy was by motion to quash, under section 1792, Code of 1906, providing that no person shall be

excused from testifying before the grand jury, but that none shall be prosecuted because of such testimony; and that an indictment founded on the testimony of an accused before the grand jury in pursuance to a subpoena will be quashed. Chief Justice Whitfield, without setting forth the facts, merely stated. "The action of the court in quashing the indictment was correct. Section 1792 of the Code of 1906."

Under the authorities there can be no difference in the effect of compelling the production of books, papers, etc., before the grand jury, and the compelling of testimony by a person. But it is said that this Court, in Pringle v. State, 108 Miss. 802, 67 So. 455, held that evidence, although wrongfully obtained, might be used in evidence in prosecution of the person. It was argued in Owens v. State, 133 Miss. 753, 98 So. 233, that the case of Tucker v. State, 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377, was in conflict with the announcement in the Pringle case; but the Court, speaking through Judge Anderson, at page 773 of 133 Mississippi report, 98 So. at page 235, said: "It is argued that the Pringle Case (108 Miss. 802, 67 So. 455) and the Tucker Case are in conflict. There are two most important differences in the two cases. In the Pringle Case the incriminating evidence was taken from the defendant's person while he was under arrest and in jail; and furthermore the court, in its opinion, states: 'It does not appear that appellant objected to the search of his clothing.' The defendant was not under arrest in the Tucker Case and did not consent to the search."

It has been the law in this state from the beginning that a person might be searched upon being arrested for crime, the search being limited in its scope to the taking of such things from a person as would tend to establish the crime for which he is arrested, or that would facilitate his escape. The question of the right to search as incident to a lawful arrest is discussed in Toliver v. State, 133 Miss. 789, 98 So. 342, in which case authori-

ties are cited where the question has been considered and discussed in other courts.

We are of the opinion, therefore, that the county court was correct in quashing the indictment; and the judgment is affirmed.

Affirmed.

### DISSENTING OPINION.

**Smith, C. J.**, delivered a dissenting opinion.

I am of the opinion that the court below should have overruled the motion to quash this indictment, for the reason that the appellee has not brought himself within the provisions of Section 1286, Code of 1930. The immunity there given from prosecution is to a witness who himself testifies to matters tending to criminate him or produces documents tending so to do, and not to the owner of documents tending to criminate him, given in evidence not by the owner thereof but by another.

The statute falls into two main divisions: (1) It requires all persons to attend a grand jury or any court and there testify or give evidence as to violations of the statute of which he has knowledge, although the evidence disclosed by him, documentary or otherwise, may tend to criminate him or subject him to a penalty or forfeiture; (2) grants to a person so testifying immunity from prosecution or subjection to a penalty for or on account of the matters disclosed by his testimony. The testimony required is from the person it tends to criminate, and the immunity from prosecution is given to the person testifying.

But it is said that the use in evidence of a document which tends to criminate its owner, though not obtained from him by testimonial process, violates the owner's privilege against self-crimination and should be held to be within the statute's immunity from prosecution.

There are two sufficient answers to this. First, the statute does not so provide, and being plain and unambiguous should be enforced as written; and, second, if the

giving in evidence of documents by one not the owner thereof which tends to criminate the owner; violates the owner's privilege against self-crimination, this statute does not remove such evidence from the protection of the privilege, and, consequently, to that extent the privilege remains in full force and effect.

The statute embraces all evidence that judicial thought brought within the privilege against self-crimination when it was first enacted in 1837. Hutchinson's Miss. Code, Chap. 64, Art. II, Sec. 1, par. 6. In 1837, judicial thought, without dissent, confined the privilege against self-crimination to evidence and documents sought to be obtained by testimonial process from the person the evidence or document tended to criminate, and did not include within the privilege documents tending to criminate a person, obtained from his possession or control by means other than "process against him as a witness." That documents so obtained are within the privilege first appeared in judicial thought in 1885 in the opinion rendered by the Supreme Court of the United States in Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746. That case has been followed by a few of the courts, and was by this Court in 1922 in Tucker v. State, 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377. All of this will appear from 4 Wig. on Ev., 2nd Ed., Sec. 2263, et seq.

It may be that the statute should be amended so as to remove from the privilege against self-crimination evidence brought by this Court within the privilege eighty-five years after the statute was first enacted. But that question is for the determination of the Legislature, and not of this Court.

The statute, when enacted, clearly did not embrace evidence of the character here under consideration, and its inclusion therein should be made only by an amendment thereto.

**McGowen** and **Griffith, JJ.**, concur in this opinion.