WHEAT v. STATE.

(In Banc. April 14, 1947.)

[30 So. (2d) 84. No. 36274.]

Barnett, Barnett, Jones & Stone, Francis S. Bowling, and **Forrest B. Jackson**, all of Jackson, **Bidwell Adam**, of Gulfport, and **Walter Gex**, of Bay St. Louis, for appellant.

**Greek L. Rice,** Attorney General, by **R. O. Arrington,** Assistant Attorney General, and **W. D. Conn, Jr.,** of Jackson, for appellee.

Argued orally by **Ross R. Barnett** and **Francis Bowling**, for appellant, and by **W. D. Conn, Jr.**, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

Appellant and another were indicted by the grand jury of the First Judicial District of Hinds County, Mississippi, for embezzlement. The indictment charged that appellant ''being then and there a duly qualified and acting field representative of the Motor Vehicle Commissioner of the State of Mississippi, as provided by law, for a sea wall county, to wit: Hancock County, Mississippi, did then and there have in their possession by virtue of their

said employment money to the value of $1,012 good and lawful money of the United States of America, the property of the State of Mississippi, which said money had theretofore come into their hands by virtue of their said employment and which they were under the legal obligation to immediately pay over to the Motor Vehicle Commissioner of the State of Mississippi at his office in the City of Jackson, in the First Judicial District of Hinds County, Miss., and did then and there wilfully, unlawfully and feloniously fail and refuse to immediately turn over said money according to their legal obligation so to do to the Motor Vehicle Commissioner aforesaid.''

The progressive constituents of the crime thus charged are (1) appellant's capacity as qualified and acting field representative of the Motor Vehicle Commissioner; (2) for a sea wall county, to wit, Hancock; and (3) by virtue of said employment had in his possession certain money, the property of the State; and (4) which it was his duty to turn over to the Motor Vehicle Commissioner; and (5) which he feloniously failed to do.

By Chapter 224, Laws 1944, the Legislature created a Committee known as the ''Legislative Gasoline Investigating Committee,'' composed of three senators and three representatives. Provision therein was made for appointment of the membership and the organization of the Committee. Section 2 thereof authorized vacation hearings with ''full and complete authority to conduct an investigation of alleged evasions of the tax on gasoline and other petroleum products, abuses of the gasoline tax refund law, the manner and system of collecting and handling the gasoline tax, the advisability of allowing refunds and exemptions in connection with gasoline tax, the automobile, bus and truck privilege taxes, and the system of collecting and handling said taxes.'' The Committee was further empowered to examine witnesses, send for persons and papers, order the attendance of any witness or the production of any paper as evidence. It was also directed that obedience to process for the above ''may be

enforced by the attachment of persons, papers, or records subpoenaed, or by fine or imprisonment, in the discretion of the committee . . ." The Committee officers were authorized to administer oaths, and witnesses swearing falsely were made guilty of perjury; and the act further made refusal to testify or produce records or documents punishable as contempt of the Committee and the Legislature.

The act contained this provision, vital in the case at bar: "A person sworn and examined as a witness before said committee, without procurement or contrivance on his part, shall not be held to answer criminally, or be subject to any penalty or forfeiture for any fact or act touching which he is required to testify; nor shall any statement made, or book, document, or paper produced by any such witness be competent evidence in any criminal proceeding against such witness other than for perjury in delivering his evidence; nor shall such witness refuse to testify to any fact or to produce any book, document, or paper touching which he is to be examined on the ground that he thereby will incriminate himself or that it will tend to disgrace or render him infamous."

Section 26 of the Constitution of Mississippi prohibits compulsion upon one to give evidence against oneself, in criminal prosecutions. This provision includes evidence by defendant out of court as well as in court. State v. Billups, 179 Miss. 352, 174 So. 50. Starting with the Code of 1892, our statutory law has contained a statute along identical lines with the foregoing immunity provision of the special act involved here, Section 3337, Code 1942.

Appellant was summoned before the Legislative Gasoline Investigating Committee, supra, and compelled to testify. His examination was directed principally to his employment, its incidents, his salary, and his granting 30-day permits, his collection of the fees therefrom, and with whom he settled. Among other things, it was brought out from him that he always filled out personally the permits he granted, and for which he collected the

fee. This is of special significance here, since all of the elements above collectively entered into his conviction of the crime for which he was later indicted ante, including his handling of the 30-day permits. The modus operandi practiced by appellant in defrauding the State here was simple. We cite one instance, typical of the others. Permit Book No. 129,971 was entrusted to appellant. The permits were in triplicates. All three were presented in evidence at the trial, and revealed a permit from this book to a certain party. The original showed collection of $187, while the duplicate and triplicate, turned into the Commissioner with remittance, showed only $7 as having been collected from the taxpayer. This permit was signed by appellant. The jury found appellant guilty as charged, after a severance had been granted, and after the trial judge overruled a special plea of immunity filed by appellant because of having been compelled to testify before the aforesaid Legislative Committee.

This plea of immunity claimed that "on or about the 16th day of August, 1944, and on or about the 16th day of September, 1944, and a third time on or about the 1st day of October, 1944, the defendant was called and requested to appear before said committee and, without procurement or contrivance on his part did appear before said committee and was by it duly sworn and testified concerning" the several matters detailed therein and hereinbefore, as well as others. We do not discuss his appearance before the Committee on any date other than August 16, 1944, when his testimony was transcribed, since there was a conflict in the evidence as to the "others," which conflict the trial judge resolved against appellant. His decision thereon is binding on us. The plea of immunity, however, was erroneously overruled as to the uncontradicted evidence, we think.

Suffice it to say, appellant was interrogated as to Numbers One, Two, Three and Four listed, ante, in reference to the elements of the crime charged in the indictment.

A transcript of this inquisition, taken by a stenographer, reflects testimony from appellant, before the Committee, as stated above. There is no contradiction that such questions were in fact asked and answered by appellant. The controversy involves their sufficiency to sustain his plea of immunity. We think that he was later indicted and convicted in regard to ''facts and acts,'' ''touching'' which he then was required to testify, and therefore became immune, and cannot now be held to answer criminally for them. He makes no point here that he is not guilty, only that he is not subject to prosecution.

The State contends that the Committee, ''with no thought of any criminal acts being involved, was attempting to familiarize itself with the general workings of the Commissioner's department, both in the office and in the field.'' To which, appellant replies that ''regardless of the intention of the committee, we submit that Morris Wheat by the sworn testimony transcribed into this record, as given before the committee on August 16, 1944, testified to matters touching upon the facts upon which the indictment is based. An essential part of the indictment for embezzlement was Morris Wheat's employment capacity, his money received, and the manner and way in which the temporary permits were issued, and their record kept by him.'' In this connection, it is pertinent to repeat here what this Court has heretofore said about election by public officials between the prosecution of parties themselves, and obtaining information from such parties, involved in a system being investigated, in the case of State v. Bates, 187 Miss. 172, 192 So. 832, 837.

In that case it was declared: ''There are instances where many persons are engaged in crime, or in the conduct of criminal or illegal business, punishable by fine and imprisonment, or by penal fines or assessments, where it is often desirable, if not necessary, to secure the evidence of one of the defendants, in order to punish the others, and destroy the illegal business in which they are engaged; and the legislature had in mind the doing of this

in passing these immunity statutes; leaving to the discretion of the state prosecuting powers the determination of the question whether the giving of immunity to the particular person was for the public good, instead of prosecuting him as a criminal, with the possibility of acquittal.''

Most of the questions addressed to him on August 16, 1944, were undoubtedly personal to appellant, and stressed his own personal acts, rather than any general inquiry into the over-all system of the Motor Vehicle Commission. The Committee already knew the answers to some of the questions in some cases, undoubtedly, but did not, until then, have them from appellant. It is not absolutely requisite to the effectiveness of the immunity that the witness be the only source of information touching the "facts" or "acts" about which he was interrogated by the Committee. Nor is it essential that his answer constitute a confession of a completed criminal act. It is sufficient if he is required to disclose, and does disclose, substantial information himself as to material elements necessary in the drafting of the indictment, and in the development of criminal results, and indispensable to a conviction. Here, the principal lines of inquiry by the Committee, as stated, were concentrated upon appellant's activities personally,—what his employment was, who his employer was, whether it was in a Coast County, if he issued 30-day permits, what he did about them, if he were still issuing them, what his salary was, why he issued the permits, with whom he cleared his remittances, and if he permitted the taxpayer to fill out the permits, or if he always filled them out himself. He could have been punished for contempt upon refusal to answer; and was promised immunity from prosecution, if he answered, thereby waiving his constitutional guaranty against self-incrimination. He was not capable of, or permitted to, make nice distinctions regarding the legal effect or extent of his answers.

All of the above matters were vitally and fundamental ly integrated into the indictment for the crime of embezzlement of funds by appellant in the course of his issuance of 30-day permits while employed, as charged in the indictment; and all were necessary steps in the forward progress of the essential proof of appellant's guilt before the jury on such charge. The only thing missing in his inquisition, to make the effect thereof a perfect criminal investigation, was a question as to the ultimate act in the felonious picture, that is, the failure to pay over the whole sum collected, and a confession thereof. Such question and confession were not necessary to entitle appellant to immunity.

Referring again to State v. Bates, supra, where was concerned the question of appellant's immunity under Section 2529, Code 1942, dealing with testimony as to violations of gaming laws, we further said: "The question here involved goes to the power of the grand jury to return an indictment in cases where the evidence is so obtained, and it is not a question of sufficiency, or competency, or irrelevancy, of evidence before the grand jury, considered as such. The section prohibits the grand jury, after obtaining such evidence, from instituting a prosecution in connection with the matter concerning the witnesses or the documents produced before it. It is the legality of the indictment which is involved, and not the competency or sufficiency of the evidence before the grand jury; . . ." Compare the language of the statute here: "A person sworn and examined as a witness before said committee, without procurement or contrivance on his part, shall not be held to answer criminally, or be subject to any penalty or forfeiture *for any fact or act touching which he is required to testify*; . . ." (Italics ours.)

The statute's grant of immunity in such cases is often a valuable aid to public investigations, as we have already pointed out, supra, and its protection should be denied a witness only where the evidence is clear and convincing

that he is not entitled to it. Otherwise, its statutory purpose may encounter reluctant and difficult witnesses, thereby becoming obstacles to the accomplishment of the ends of the investigation, through fear that the immunity promised the witness might be technically so attenuated by judicial construction as to cease to have any force whatever. Therefore, it is a wise policy for the State, and fair to the witness, to have the promise of immunity mean what it offers. The willingness of witnesses to testify, where this grant is liberally construed in favor of its application, would be increased; but on the contrary, where befogged by technical and interpretive obfuscations, witnesses naturally would more and more be inclined to stand upon their constitutional guarantee, wherever possible, rather than upon dubious statutory immunity.

We feel confident that no one will deny that the matters, facts and acts, about which appellant was compelled to testify, were separate links in the whole chain of his indictment, prosecution and conviction. To read the indictment, the transcript of appellant's testimony before the legislative committee, and the proof against him at his trial for embezzlement, makes it perfectly clear that they were each and all essential and indispensable links in the entire prosecution. Wharton's Criminal Evidence, (11th Ed.), Vol. 3, Sec. 1137, p. 1976, lays down this rule: ''Thus, a witness cannot be compelled to give a link to a chain of evidence by which his conviction of a criminal offense can be furthered. The rule is firmly established that, if the proposed testimony has a tendency to incriminate the witness, establishes a link in the chain of evidence which may lead to his conviction, or discloses the names of persons upon whose testimony he might be convicted, he cannot be compelled to answer.''

In State v. Simmons Hardware Co., 109 Mo. 118, 18 S. W. 1125, 1127, 15 L. R. A. 676, it is said on page 678 as follows: ''One of the most philosophical text-writers on the law of evidence summarizes the conclusions of many

decisions on the subject thus: 'It has been said that a witness cannot be compelled to give a link to a chain of evidence by which his conviction of a criminal offense can be insured, and this position is abundantly sustained by authority.' 1 Whart. Ev. (3d Ed.), Sec. 536, and cases cited.''

We think this is an enlightened rule and fits the "facts and acts touching which appellant was required to testify,'' and that in accordance with the immunity promised him by the statute, he cannot be held to answer criminally for the crime of embezzlement here, involving such "facts and acts." Therefore, it follows that his plea of immunity should have been sustained, and he discharged from custody.

The judgment of the trial court for failure to sustain the plea of immunity is reversed and appellant discharged.

Reversed and appellant discharged.

**Griffith, J.,** delivered a concurring opinion.

Upon my own extended examination of the cases and texts, I am convinced that the "link theory" adopted in the controlling opinion is sustained by the weight of authority. The most elaborate discussion of the subject is found in 8 Wigmore on Evidence (3d Ed.). The opening paragraph of Sec. 2260, that volume, seems to lay down the "link theory" as the real rule, although the author goes on further and apparently gives support to the theories "tending to incriminate" and the "clue to incrimination." If the weight of the cases did not support the "link theory," I would prefer an adherence rather to the other two views.

My experience and observation of more than 18 years on this Court have definitely convinced me that when a subject has been thoroughly debated before, and considered by, the courts throughout the country so that we can distinctly see what is the weight of authority on any question

not controlled by our own statutes or decisions, we should follow the majority, save only when we can confidently say that the rule of the majority is manifestly wrong or is mischievous in its effect as applied to the situation in our state. In this way only may we give to the law a practical measure of certainty and make it the law of the land rather than the pronouncement of the particular judges who, in a particular case and for the time being, may happen to have the power to decide.

**Alexander, J.,** delivered a dissenting opinion.

I confess a fear that we have put into the statute more than the Legislature intended. We have, in effect, invested a legislative subpoena with the virtue of an antidote against criminal responsibility, and so charged the committee room with healing atmosphere that a brief exposure thereto will immunize the guilty against the pains of prosecution.

The statute was intended to do no more than protect a witness against criminal responsibility in respect of any crime or essential element thereof about which he may have been required to testify. This view leaves open the door of inquiry whether in a given case the disclosure was of a matter which might reasonably tend to incriminate the witness. Such is the import of all such statutes regardless of the variations in language. Wigmore, Evidence (3d Ed.) Sec. 2263.

There was no question asked appellant before the legislative committee which, even aided by imagination, could have tended to incriminate him or have furnished an essential link or a helpful clue in a later prosecution of appellant. No documents were introduced. The mere fact that the expression "thirty day permits" was employed during the brief inquiry is no more significant than that the witness gave his name—an indispensable element in any indictment. Consistency would immunize a witness against prosecution for murder by drowning by his

chance reference to water. Abrams v. United States, 2 Cir., 64 F. (2d) 22.

The testimony of appellant before the committee could not and did not aid in its prosecution. His name and occupation were matters already known and were of public record. Thus is given point to the above conclusion that the mere status of appellant as a witness has been allowed automatically to immunize him. Attention is invited to Wigmore, op. cit. supra, Sections 2260, 2261, without further citation.

Finally the appraisement of the degree to which the answers tend to incriminate is not to be made by the witness but by the Court. Wigmore, op. cit., Section 2271. This can mean only that the issue for the Court is whether the disclosures are merely casual or formal or whether the witness has furnished necessary component parts of the legal weapon that is later turned against him. In other words, has he injured himself? By this test the appellant here emerged from the committee room unscathed by either accusation or suspicion. He has said nothing that could be borrowed for use in an indictment or testimony thereunder. His answers could have been found in a city directory. He has by his physical presence before the committee been coated with a film of insulation against criminal molestation from any source or for any act he may have committed while he bore the name he revealed and while he followed the lawful employment whose nature he condescended to divulge. The State had employed him to do exactly what he said he was doing. He may well be comforted in his extremity by the reflection that the Court has treated him with that "morbid delicacy" which Prof. Wigmore deplores. Emphasis is shifted from the tendency of testimony to incriminate to the tendency of courts to absolve.

The rationale of the immunity statutes is that in return for the furnishing by the witness of an essential element of a crime he is in return absolved from criminal responsibility to answer the completed crime. Yet if he gives

nothing he ought to get nothing. If he has not helped the State, it is under no obligation to help him. If he withholds incriminating facts the State withholds immunity.

Between the extremes of a complete confession of guilt on the one hand and a perfunctory statement of irrelevant matters, there must be room for the play of the trial court's reasonable and practical appraisement of a witness' testimony by testing whether it would "inspire belief in a reasonable and unprejudicial mind that it points toward guilt and links up with the principal fact under investigation." Price v. Commonwealth, 296 Ky. 144, 176 S. W. (2d) 271. See also Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110; Roberts v. State, 43 Ga. App. 108, 157 S. E. 887; People v. Mather, 4 Wend. 229, 252, 21 Am. Dec. 122; Brown v. Walker, 161 U. S. 591, 16 S. Ct. 644, 40 L. Ed. 819; Ward v. State, 2 Mo. 120, 22 Am. Dec. 449; In re Jennings, 154 Or. 482, 59 P. (2d) 702; In re Schnitzer, 295 Mich. 736, 295 N. W. 478; People v. Robinson, 306 Mich. 167, 10 N. W. (2d) 817; United States v. Weisman, 2 Cir., 111 F. (2d) 260.

It would seem that we construed the statute into a facile device whereby the guilty may gain absolution without confession.