BAILEY, STATE TAX COLLECTOR *v.* MUSE, et al.

No. 39983 March 5, 1956 85 So. 2d 918

52

*Pyles & Tucker, Lemuel O. Smith, Jr.,* Jackson, for appellant.

*Creekmore & Beacham, Gore & Gore,* Jackson, for appellees.

56

58

ETHRIDGE, J.

The State Tax Collector, Mrs. Thomas L. Bailey, brought this suit in the Chancery Court, First Judicial District of Hinds County, against Kenneth and L. N. Muse and seven other defendants, for the purpose of collecting from them the statutory fine and penalty provided by Code of 1942, Sections 2639 and 2640. Six other defendants were joined in attachment and garnishment as debtors of the principal defendants. Section 2639 provides in brief that any person who sells or gives away intoxicating liquor unlawfully shall be subject to pay to the state, county and city where the offense is committed, each, the sum of $500, and that the state, county or city, or the State Tax Collector, may sue and recover civilly each said sum of $500. Section 2640 gives concurrent jurisdiction to the chancery court for such suits, with authority to suppress as a nuisance such places of business.

The chancery court dismissed the bill as to the four women defendants, holding that the evidence was not sufficient to show that they were joint adventurers in this liquor business with the other defendants. The court then rendered a decree for $4,000 against Kenneth and L. N. Muse, and the other three male defendants.

The State Tax Collector appeals from that decree, claiming that the $500 should have been assessed for each separate sale, but it is unnecessary to consider here that contention. Kenneth and L. N. Muse, and the three Hintons cross-appeal from the decree, and one of their arguments is that they were acquired to testify against themselves, and therefore under Code Section 2630 they were immune from assessments of the fines and penalties of the statute. Since that point on the cross-appeal is correct, we shall go directly to that point.

The bill of complaint in considerable detail charged that all nine of the defendants were joint adventurers in the ownership, control and operation of a business for the sale of intoxicating liquors, under the trade name of L. N. and Kenneth Muse; that their business is located at the designated places in Rankin County and in the City of Jackson; and that the defendants purchased federal occupational retail and wholesale liquor dealers permits. Attached to the bill was a photostatic copy of a tax return made by Kenneth Muse as partner to the Internal Revenue Service of the U. S. Treasury Department. This exhibit reflected 282 sales in Hinds, Madison and Rankin Counties for the month in question and for which this suit is brought, January 1954. So the bill asked for the assessment of penalties under Code Section 2639 of $500 for each of the sales, to be recovered by Complainant for the benefit of the state, the Counties of Hinds, Rankin and Madison, and the Cities of Jackson and Canton. The prayer of the bill did not ask that the places of business be abated as nuisances.

The defendants filed motions to strike Exhibit A, the federal tax return. The motions were overruled, but it

is unnecessary to consider them in view of the disposition of this case. Before defendants had filed any answers to the bill of complaint, they presented to the chancery court motions for a rule of court, which averred that this was a suit for penalties and forfeitures, and under Code Section 1291 defendants in chancery are required to answer fully all of the allegations of the bill; and that under Code Section 2630 defendants could not be required to answer any averments of fact in the bill which would tend to incriminate them, unless they were thereby given immunity from liability from the penalties and forfeitures sued for in this action. Hence defendants in this motion asked: ". . . the Court for a rule as to whether, in view of the above mentioned provisions of the statutes and Constitution of the State of Mississippi, they are:

"(a) Required to answer any averment of fact contained in said bill as to which the answer would tend to incriminate them, or subject them to a penalty or forfeiture.

"(b) If they be so required to answer as to any such averment of fact, whether they thereby become entitled to immunity from the penalties and forfeitures sought by this suit."

The court overruled these motions. It required defendants to answer the bill fully, and stated that the only immunity to which they would be entitled would be an immunity from criminal prosecution, but no immunity as to the penalties and fines sued for. The decree stated:

"1. The answer of said defendants and each of them shall, in all respects be as is required in respect to answers in the Chancery Court, as provided by Section 1291, Code of 1942.

"2. By so answering as hereinabove provided, if information which may be self incriminating is disclosed the immunity of the defendants and each of them shall be limited to prosecution under the criminal laws of the State of Mississippi."

Following this mandate by the chancery court, the defendants Kenneth and L. N. Muse, and J. J. Hinton, filed answers in which they denied that they were joint adventurers. The Muses admitted that they were partners engaged in a business for the sale of intoxicating liquors, admitted that they had purchased the federal permits, described their method of operation, admitted that Exhibit A, the federal tax return was a correct copy of their return, and admitted that they had failed to pay the $500 penalties. J. J. Hinton's answer denied that he was a joint adventurer with the Muses, but contained admissions similar to those in the answer of Kenneth and L. N. Muse.

The answer of the other two male defendants against whom the final decree was rendered, Q. E. and Glenn Hinton, denied that they were joint adventurers with the other defendants. Q. E. Hinton, however, admitted that he was an employee of J. J. Hinton and of the Muses on a part-time basis, in an illegal liquor business. Glenn Hinton admitted that he is an employee of L. N. and Kenneth Muse in a similar business. The four women defendants, Mrs. Kenneth and Mrs. L. N. Muse, Mrs. J. J. Hinton, and Mrs. J. L. Henderson in their answers denied that they were joint adventurers in such business with the other defendants, and denied that they had anything to do with such business. Complainant offered no evidence to support the charges of these sales in January 1954, other than the federal tax return of the Muses, Exhibit A to the bill, and some invoices from a Louisiana wholesaler. Complainant offered income tax returns, license tag receipts and other documentary evidence as circumstantial evidence of the existence of a joint adventure among all of the defendants. Complainant of course relied also upon the admissions of the five male defendants as set forth in their answers. The final decree rendered a judgment of $4,000 against Kenneth and L. N. Muse, and J. J., Q. E. and Glenn Hinton. The chan-

cellor correctly found that the evidence was insufficient to show that the four women defendants were joint adventurers in this illegal business, and dismissed the bill as to them.

■ ■ We need not consider alone the provisions of Mississippi Constitution, Section 26, w h i c h provides that: ''In all criminal prosecutions the accused . . . shall not be compelled to give evidence against himself.'' This decision is controlled by the express terms of Code of 1942, Section 2630: ''No person shall be excused from attending and testifying before a grand jury, or before any court, or in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of this chapter, or any amendment thereof, on the ground and for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subject to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before the grand jury, or any court; Provided, that no person so testifying shall be exempt from prosecution or punishment for perjury in so testifying. Any person who shall neglect or refuse to so attend or testify, or to answer any lawful inquiry, or to produce books or other documentary evidence, if in his power to do so, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than one hundred dollars or more than five hundred dollars, or by imprisonment for not more than ninety days, or by both such fines and imprisonment.''

This statute is clear and definite, and has been interpreted in three earlier and similar cases, beginning in 1939. Its provisions apply to civil actions for fines and penalties, including those under Section 2639, involved in this suit. ■ ■ Nor is there any difference in a com-

plainant putting a defendant on the witness stand as an adverse witness and making him incriminate himself, and in requiring him to answer in full those allegations of a bill of complaint in chancery which incriminate him. In either case he is required to incriminate himself, in violation of State Constitution Section 26 and Code Section 2630. Under that statute the result is that a defendant is made immune from the fines and penalties sued for under Section 2639 in the suit in question. The cross-appellants amply raised and preserved this question in the chancery court, which expressly ruled on it and required a full answer to all of the bill of complaint.

Section 2630 provides that no person before any court or "in any cause or proceeding, criminal or otherwise" growing out of violations of the intoxicating liquor statutes shall be excused from testifying before any court or giving evidence "documentary or otherwise, required of him," even though it may tend to criminate him or subject him to a penalty or forfeiture. However, in order to comply with the mandate of Constitution Section 26, the statute further states that no person shall be prosecuted "or subject to any penalty or forfeiture" for any transaction concerning which he may "testify, or produce evidence, documentary or otherwise." Since this is a suit for penalties and forfeitures, the chancery court should not have compelled the defendants to answer that part of the bill of complaint which tends to incriminate them, unless the court desired to give them immunity from the particular penalties and fines sued for in this case, arising in January 1954. Because they were so required, it is manifest that under the statute they were exempt from the assessment of the penalties and forfeitures which are involved in this case.

In three prior decisions this Court has held that where the defendant was required to testify against himself, he was immune from liability for the penalties and forfeitures under Code Section 2639. Malouf v. Gully, State

Tax Collector, 187 Miss. 331, 192 So. 2d 2 (1939), involved a suit by the State Tax Collector against Malouf to abate the defendant's business as a nuisance and to recover the statutory penalties. In his answer Malouf denied the allegations of the bill, but at the hearing the State Tax Collector put the defendant on the witness stand as an adverse witness and he was required to testify and admit his guilt. The Court rendered judgment for defendant and held: ''We are of opinion that under the provision of Section 1991, Malouf, by his testimony, was rendered immune to the further prosecution of this cause, and we reach that conclusion upon the following considerations: Manifestly, under the allegations and prayer of the bill, it was sought to subject Malouf to penalties and forfeitures. They are expressly provided for by the statutes. It is argued, however, that, by the temporary injunction, the court only enjoined the further prosecution of the business and imposed no penalty or forfeiture. The term 'forfeiture' has a very comprehensive meaning, and expresses the result which flows from a failure to comply with the law. 25 C. J., Section 43, p. 1169. Malouf's admission of guilt subjected him to the forfeiture of both his liquor business and his dry goods and grocery business.''

In Serio v. Gully, State Tax Collector, 189 Miss. 558, 198 So. 307 (1940), a similar suit was brought. The State Tax Collector called defendant to the witness stand as an adverse witness and proved by him that he owned the premises, in which it was alleged that intoxicating liquors were sold, and that he had a federal license for the sale thereof. After this, defendant filed a motion in arrest of judgment, claiming immunity from the consequences of the alleged violations of law. The court followed the Malouf case, held that the plea of immunity should have been sustained, reversed the trial court and discharged appellant.

In 1953 the same issue was presented and decided in Zambroni v. State, ex rel Hawkins, District Attorney,

217 Miss. 418, 64 So. 2d 335. There the state by the district attorney filed suit in chancery court against Zambroni and another for an injunction against the sale of intoxicating liquors at his place of business in Marshall County. On the trial the state called both defendants as adverse witnesses and compelled them to testify. They admitted operation of the store, that federal retail and wholesale liquor licenses had been issued to them, admitted the payment of "black market" taxes to the state, and admitted that they had sold more than ten thousand cases of intoxicating liquor. Defendants offered no testimony, but made a motion to dismiss the suit on the ground that they were compelled to testify against themselves, and were therefore immune from further prosecution of the suit. The chancellor overruled this motion. On appeal the decision was reversed and judgment rendered here dismissing the bill of complaint. The Court followed the Malouf and Serio cases.

 The immunity spelled out in Code Section 2630 expressly applies to any cause or proceeding, criminal or otherwise. It extends to any evidence, documentary or otherwise, required of the defendant. The word "evidence" has been given a broad meaning, and is held to mean evidence by a defendant out of court as well as in court, and to include evidence obtained from a defendant's books and records brought in by process of court. State v. Billups, 179 Miss. 352, 174 So. 50 (1937).

The only new question in this case is whether such evidence required to be given includes the self-incriminating part of an answer in chancery, which is required by the chancery court after the defendants first invoke their immunity.

 Code Section 1291 provides that a defendant in chancery shall answer fully all of the allegations of the bill, and that all averments of fact not denied by the answer otherwise than by the general traverse "may be taken at the hearing as admitted." This statute applies

to suits for penalties under Sections 2639 and 2640. Noé v. Gully, 189 Miss. 1, 193 So. 36 (1940); Malvezzi v. Gully, 189 Miss. 20, 193 So. 42 (1940). It is also well-established that the privilege against self-incrimination as set forth in Code Section 2630 and Constitution Section 26 applies to civil as well as criminal actions. State v. Billups, supra; State v. Bates, 187 Miss. 172, 181, 192 So. 832 (1940); 8 Wigmore, Evidence, (3rd Ed. 1940), Section 2252.

 Although this Court has never expressly ruled on the issue of whether the privilege against self-incrimination extends to an answer in chancery, it appears that it is well-established elsewhere that it does. 70 C. J., Witnesses, Section 874 (4), pp. 721-722 surveys the decisions: "Proceedings to Which Applicable. Notwithstanding the constitutional provision is worded simply that no person 'shall be compelled in any criminal case to be a witness against himself,' the privilege of refusing to answer extends to all proceedings sanctioned by law and to any investigation, ex parte or otherwise, litigious or not. The phrase 'in any criminal case,' as so used, has been judicially applied to proceedings under the executive, legislative, or judicial powers of government directed against the person invoking the provision, or against co-offenders with such person, or against unrelated third parties, and to such as are preliminary, collateral, or independent. So it has been held that the privilege may be claimed in civil actions and proceedings, as, for example, with reference to an answer in chancery, a proceeding for discovery, or for examination before trial, to interrogations of a party in equity before trial . . .''

58 Am. Jur., Witnesses, Section 45, says: "The constitutional provision is applicable to an answer in a chancery case, and the defendant may not be required by his answer to state facts which will tend to incriminate himself." There is an annotation in 52 A. L. R. 143 (1928),

"Privilege Against Self-incrimination as Applicable to Answer to Pleadings," which surveys the numerous decisions on this subject.

A leading case is State of Michigan v. Danziger, 238 Mich. 39, 213 N. W. 448 (1927). The state by its prosecuting attorney filed a suit in chancery to abate defendant's place as a nuisance, charging that the premises were being used for the purpose of lewdness, assignation and prostitution. The trial court held that the statute upon which the suit was based was unconstitutional because the defendant could not be compelled to answer allegations which would admit the commission of the offense subject to the penalty and forfeiture. The Michigan Supreme Court reversed this decision, and held that the bill should not have been dismissed. However, it further said that a defendant may not be required in his answer to state facts which would tend to incriminate himself, and that the constitutional provision against self-incrimination is applicable to an answer in chancery. This does not preclude the state or its officers from bringing a suit in chancery to abate the nuisance. The remedy of the defendant is to decline to answer those averments only in the bill which might tend to criminate him. So the Michigan Court reversed the case for further proceedings consistent with its decision. Danziger was followed in Albert v. Chambers, 335 Mich. 111, 55 N. W. 2d 752 (1952) and Mumford v. Croft, 93 Atl. 2d 506 (Del. 1952). See Corwin, The Supreme Court's Construction of the Self-incrimination Clause, 29 Mich. L. Rev. 1, 191 (1930). This appears to be the universal rule, extending the privilege against self-incrimination to answers in chancery. Of course if the chancellor, as here, requires an answer in full, then under Code Section 2630 the defendant must so answer, but he is immune from assessment of the penalties and forfeitures insofar as the answer has tended to incriminate him with respect to them.

Griffith, Mississippi Chancery Practice (2d Ed. 1950), Section 350, discusses the requirement of fullness of an answer in chancery. He states: "And a defendant is not required to answer as to matter that would incriminate him . . ." See Watts v. Smith, 24 Miss. 80 (1852).

The classic discussion of the privilege against self-incrimination is in Volume 8 of Wigmore, Evidence, (3d Ed. 1940), Sections 2250-2284. He states that the protection extends to all manner of proceedings and "in all methods of interrogation before a court." Section 2252. In Section 2257 Wigmore summarizes many types of civil cases involving this problem: "In a civil case, it often happens that a main part of the issue concerns *conduct which is also criminal;* but the privilege protects nevertheless. The mere fact that a civil liability also inheres in the same act does not override the criminal liability; for it would not be possible to disclose the former without also disclosing the latter. This application of the principle causes hardship to civil parties who are in no wise interested in the criminal aspect of their opponents' conduct and yet are by that circumstance balked of discovery of their civil wrongs; but the doctrine is unquestioned. It finds illustration in civil suits involving libel, adultery and the like, fraud, bankruptcy, and sundry misconduct. The traditional allegation, in chancery bills, of a conspiracy by the defendants is not of itself an obstacle to discovery, because it is usually a mere formal phrase of the draftsman. Moreover, it may also be possible to separate one's inquiries, so as to require discovery as to the portion concerning non-criminal acts." See ibid., Sections 2268 and 2252; Bell v. Klein (S. C.) 1 D. L. R. 225 (1954); U. S. v. Field, 193 F. 2d 92 (C. A. 2d 1951); State ex rel, Neilson v. District Court, 277 P. 2d 536 (Mont. 1954); Siegel v. Crawford, 266 App. Div. 837, 42 N. Y. Supp. 2d 837 (1943); Owen v. Fisher, 189 Misc. 69, 66 N. Y. Supp. 2d 856 (1947); Backal v. Backal, 199 Misc. 910, 107 N. Y. Supp. 2d 11 (1951).

State v. Billups, 179 Miss. 352, 174 So. 50 (1937), and Wheat v. State, 201 Miss. 890, 30 So. 2d 84 (1947), applied the privilege to books and records brought in by a legislative committee under a subpoena duces tecum. In State v. Bates, 187 Miss. 172, 192 So. 832 (1940), the privilege was recognized where a grand jury had seized the defendant's books and records under a subpoena duces tecum.

Shumpert v. Lee County, 197 Miss. 513, 20 So. 2d 82 (1944), involved suit in chancery court by a county against a supervisor, for losses from use of county equipment for individuals, and for discovery as to identity of recipients of such bounty and the value thereof. Defendant claimed that such disclosure could not be compelled, since it would tend to incriminate him. But this contention was rejected, since no statute appeared to make these actions subject to "criminal punishment or penalty." The clear inference is that if such has existed, defendant could have claimed the privilege against self-incrimination in this chancery suit as to the discovery matter. See W. T. Rawleigh Co., Inc. v. Hester, 190 Miss. 329, 340, 200 So. 250 (1941).

 The bill of complaint waived answer under oath. Code Section 1292 states that where a complainant waives answer under oath the answer shall not be evidence for the respondent. Appellant contends that therefore the admissions in the answer are not evidence against the cross-appellants, and do not fall within the privilege as set forth in Section 2630. That rule has reference to an ancient chancery doctrine which is now much modified by Section 1294 and judicial decisions. Griffith, Mississippi Chancery Practice (2d Ed. 1950) Sections 569, 570. Under our modern system of chancery pleading "the pleadings control the scope of the testimony, supply by their admissions the place of proof as to all facts so admitted." Ibid., Section 572. If a bill

waives answer under oath, the answer is still a pleading. Ibid., Sections 364, 365. Judge Griffith in Section 566 of his text states concisely the obvious fact that the parties to a suit are bound by the admissions in their pleadings: "... and it is easier still to confess or admit all such of the facts as are, in truth, not in dispute, and to do so by their pleadings in the case: wherefore the rule is again that material facts pleaded on one side and not disputed by the other in the pleadings are admitted, and that by such admissions the respective litigants are bound, to the extent at least of the controversy in which they are made."

██ ██ Of course, where parts of an answer in chancery might tend to incriminate the defendant, he must raise the issue and claim the privilege before answer is filed, so that the trial court may have an opportunity to pass upon it. Wigmore, Sections 2268, 2271. ██ ██ The cross-appellants promptly raised this issue and were compelled by the trial court to answer the bill fully. Therefore, the provisions of Code Section 2630 are applicable, and cross-appellants are immune from liability for the penalties and forfeitures sought in this suit, as was also held earlier in the Malouf, Serio and Zambroni cases. For these reasons, on direct appeal of the State Tax Collector the case is affirmed in part, insofar as the chancery court dismissed the bill as to the four women defendants, and the decree is reversed in part as to the judgment against the other five defendants. On cross-appeal the case is reversed and judgment dismissing the bill is rendered for cross-appellants.

On direct appeal affirmed in part and reversed in part; on cross-appeal reversed and judgment dismissing the bill rendered for cross-appellants.

All justices concur.