**E. E. MORGAN, Petitioner,**

v.

**Fred THOMAS, Sheriff of Hinds County, Mississippi, or Any Other Officer of the State of Mississippi, Respondents,**

**United States Fidelity and Guaranty Company, Intervenor.**

**Civ. A. No. 4622.**

United States District Court,
S. D. Mississippi,
Jackson Division.

Nov. 3, 1970.

Vardaman S. Dunn, Jackson, Miss., for petitioner.

William A. Allain, Asst. Atty. Gen., of the State of Mississippi, Jackson, Miss., Joe A. Covington, Snow, Covington, Temple & Watts, Meridian, Miss., George H. Butler, Roger C. Landrum, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., for respondents and for respondents intervenor.

NIXON, District Judge.

## MEMORANDUM OPINION.

This marks the premiere federal appearance of this extended and protracted litigation in the Mississippi State Courts arising out of a business relationship between the petitioner, E. E. Morgan, and the intervenor, United States Fidelity & Guaranty Company (hereinafter called U.S.F. & G.). In view of the fact that their protracted legal pugilism will hereinafter be discussed in more detail, this Court will briefly state the nature thereof in order to bring the case sub judice into proper perspective. Morgan, an experienced contractor, who had large financial resources and was experienced in financing other transactions, in 1958 entered into a written partnership agreement with R. W. Hyde, Jr., also an experienced contractor who had been in the construction business since 1947, which enabled Hyde to secure the necessary financing to obtain payment and performance bonds for additional construction contracts which he desired. This partnership agreement covered bid jobs, and a separate agreement was entered into relative to negotiated jobs. Under this agreement, Morgan was to receive two and one-half percent commissions for signing applications for the bonds as indemnitor or guarantor. A copy of these agreements was furnished to U.S.F. & G. which had executed payment and performance bonds for and on behalf of Hyde, and thereafter, U.S.F. & G. executed additional payment and perform-

ance bonds for Morgan and Hyde totalling several million dollars. These bonds were issued in the name of Hyde or corporations controlled by him. Morgan signed the applications for bid job bonds individually and as co-partner, and where the jobs were negotiated, he signed the applications as indemnitor. Pursuant to these agreements of indemnity, U.S.F. & G. bound itself as surety on at least twelve different "constructions bonds".

The principals on twelve surety bonds defaulted, and various creditors filed suits on the bonds against U.S.F. & G. for labor and materials furnished in the performance of the contracts. U.S.F. & G. called upon the principals to defend these suits, but they failed to do so, and as a result, numerous judgments were rendered against U.S.F. & G., all of which it paid. Morgan was a principal and indemnitor on all of these construction bonds.

Consequently, after U.S.F. & G. had been compelled to pay the above judgments and related expenses, it sued Morgan, Hyde, and certain corporate defendants for reimbursement, indemnity, exoneration and specific performance.

Without now detailing the various state actions which have culminated in the filing of this Petition for Habeas Corpus, suffice it to say that the petition alleges that the decree of the Chancery Court of the First Judicial District of Hinds County adjudging him to be in civil contempt for failing to comply with its mandatory injunction to furnish a financial statement to U.S.F. & G. as required by the bond applications executed by him and to state under oath the identity, status and location of all his assets, would deny him his constitutional rights under the Fifth and Fourteenth Amendments of the Constitution of the United States. He therefore prayed that a Writ of Habeas Corpus be granted and that he be released from the custody of the Respondent Sheriff of Hinds County or any other officer of the State of Mississippi in whose custody he has allegedly been committed, either upon his own recognizance or upon such bond and conditions

the Court may impose; that the respondents be required to answer and make a return in due course and abide the further orders of this Court in relation to the detention of petitioner; that this Court conduct a hearing on the merits of this petition and that upon the hearing he be finally and permanently released and discharged; and that pending the hearing this Court stay any proceeding against him in the Courts of the State of Mississippi except to allow him to file and prosecute an appeal from the civil contempt adjudication to the Mississippi Supreme Court.

The Chief Judge of this District by Order of March 9, 1970, ordered the release of the petitioner on his tendering an appearance bond in the penalty of $100.00, which was subsequently tendered and approved, and further order that pending the final hearing and decision on the merits of this case by the undersigned, the petitioner shall not be detained in custody and that all proceedings, orders, and decrees against the petitioner in the Courts of the State of Mississippi shall be stayed and suspended except that an appeal to the Supreme Court of Mississippi from the Order of the Chancery Court in Cause No. 71194 thereof may be filed, prosecuted, and defended, until further orders of this Court.

The Respondents, Fred Thomas, Sheriff of Hinds County, Mississippi, and D. C. Yearwood, a Deputy Sheriff, who allegedly arrested and took Morgan into custody pursuant to the Order of Contempt of the Chancery Court, filed their answer and return herein contesting the allegations of the petitioner and praying for a dismissal of the Writ of Habeas Corpus, setting forth grounds in support thereof.

Subsequently, this Court granted the petition of U.S.F. & G. to intervene herein which it did by filing an answer and return almost identical to that filed by the respondents. Subsequently, the respondents and the intervenor were granted leave to and did amend their answers and returns, alleging that subsequent to the filing of their original answers that

the petitioner had perfected an appeal to the Supreme Court of the State of Mississippi from the subject civil contempt decree of March 9, 1970, and therefore allege that under the provisions of Title 28, U.S.C., Section 2254(b) and (c) petitioner is not entitled to maintain the present action because he has not exhausted his available state remedies.

In order to fully understand the contentions here in dispute, it is necessary to detail the background events leading up to the filing of the Petition for Citation for Contempt in the Chancery Court of Hinds County,[1] which subsequently resulted in the filing of this action.

U.S.F. & G. paid the previously discussed claims for labor and materials which were reduced to judgments against it, after notice to Hyde and Morgan. It then filed suit against Hyde, Morgan, and several corporations owned or controlled by each, asking for injunctive relief, specific performance, marshalling of assets, a money judgment or decree for its losses on the bonds, insurance premiums on certain insurance policies and attorneys' fees. After a lengthy hearing, the Chancery Court rejected Morgan's defense which attacked the validity of the bond applications on the grounds of (1) constructive fraud or fraud in law, (2) lack of consideration, and (3) that if any liability existed it was secondary to that of U.S.F. & G. assumed without their indemnification.

After a lengthy hearing, the Court rendered a decree awarding a money judgment in favor of U.S.F. & G. against Morgan for the sum of $2,642,568.35 plus the sum of $201,393.76 for insurance premiums. The decree also awarded a joint and several judgment against each of the defendant corporations in the sum of $377,124.99. The liability of Hyde and the corporations under his control was fixed, and a money judgment was awarded against them for an amount in excess of the judgment against Morgan. U.S. F. & G. was awarded $125,000.00 attorneys' fees against Morgan.

This decree was appealed only by Morgan and his corporations to the Mississippi Supreme Court, which affirmed the lower court.[2]

On September 3, 1965, U.S.F. & G. wrote Morgan a letter referring to the above decree and the provisions of a surety bond application executed in connection with a sewerage construction contract for the City of Shively, Kentucky, demanding and requesting that within ten days Morgan furnish U.S.F. & G. a financial statement showing his current financial condition, as he agreed to do by the terms of the application. In the meantime, Morgan had perfected an appeal without supersedeas from the foregoing decree, which was subsequently affirmed by the Mississippi Supreme Court. A petition for issuance of a Civil Contempt citation was filed by U.S.F. & G. with the Hinds County Chancery Court, setting forth the fact that Morgan did not furnish the required financial statement and did not comply with the above decree which had not been superseded. This citation was issued and served upon one of Morgan's attorneys, but neither he nor Morgan appeared in response thereto, and a decree pro confesso was rendered.

On November 12, 1965, a decree was entered in which Morgan was adjudged guilty of contempt for failure to furnish U.S.F. & G. the above requested financial statement, and the sheriff was commanded to take Morgan into his custody and commit him to jail until he purged himself of contempt. After the entry of this decree, Morgan perfected an appeal with supersedeas to the Mississippi Supreme Court, which reversed the decree and dismissed the contempt proceedings.[3] In

---

1. Cause No. 71194, Chancery Court, First Judicial District, Hinds County, Miss.

2. Morgan v. United States Fidelity & Guaranty Co., Miss., 191 So.2d 917 (1966). Hyde and his corporations did not participate in this appeal.

3. Morgan v. United States Fidelity & Guaranty Co., Miss., 191 So.2d 851 (1966).

reversing the lower court, the Mississippi Supreme Court found that the Chancery Court decree, which Morgan had failed to comply with, was insufficient to support the charge of contempt because (1) it was not complete in itself and required reference to extraneous documents to ascertain what obligations Morgan was required to perform; (2) it was indefinite in that it did not require the performance of any specific acts; and (3) it could not be enforced as a decree ordering Morgan to furnish U.S. F. & G. a financial statement without construing the decree as one delegating to Morgan's adversary the power to determine what Morgan must do under penalty of contempt. The Court found that the decree could not be construed as one containing a mandatory injunction to do an affirmative act not mentioned therein, and that there was no duty on the part of Morgan to respond to the citation for contempt.

Morgan subsequently could not be found within the State of Mississippi for a period of time, but when he returned and could be served with process, U.S.F. & G. filed another action against him in the Chancery Court of Hinds County, Mississippi (1) to enforce the affirmed decree of July 23, 1965; (2) to enforce specific performance of Morgan's agreement to furnish U.S.F. & G. with financial statements showing his current financial condition; (3) to compel Morgan to disclose the nature and location of his assets; and (4) to obtain other equitable relief, including the appointment of a receiver. The 1967 Judgment of the Mississippi Supreme Court

affirming the July 23, 1965 decree had previously been enrolled, and constituted a lien on all of Morgan's assets at the time that this second action was filed against him in January, 1967.

In answering the above allegations, Morgan admitted the validity and finality of the money decree and that it constituted a lien on his assets, but declined to answer the remaining allegations of Paragraph VIII of the Bill of Complaint, charging concealment of his assets, stating on oath that an answer thereof might tend to incriminate him. He expressly invoked the privilege against self-incrimination of the Fifth and Fourteenth Amendments to the United States Constitution and Article III, Sec. 26, of the Mississippi Constitution of 1890. A preliminary hearing was held on Morgan's claim of privilege and it was rejected by the Chancery Court. He was therefore ordered to answer on penalty of having the unanswered allegations of the Bill taken as confessed. Morgan then filed a Supplemental Answer under oath which reiterated his claim of the privilege against self-incrimination and continued to decline to answer the pertinent allegations of Paragraph VIII and contesting the demands in Paragraph IX for the production of a written financial statement and a written disclosure under oath, of the nature, amount and location of all his assets.

The Chancery Court reconsidered its Order directing an answer to the concealment allegation of Paragraph VIII, acknowledging the applicability of Sections 2250 [4] and 2252,[5] making removal and

---

4. Section 2250, Mississippi Code of 1942, Rec., provides:
"If any person shall move, or cause to be removed, to any place beyond the jurisdiction of this state, any personal property which shall at the time of such removal be under written pledge, or mortgage, or deed of trust, or conditional sales contract, or lien by judgment, or any other lien in this state, with intent to defraud the pledgee, mortgagee, trustee, cestui que trust, conditional vendor, or creditor, he shall be guilty of a misdemeanor, and, upon conviction, shall be fined not more than one thousand dollars ($1,000.00) or imprisoned in the county jail not more than twelve (12) months, or both."

5. Section 2252, Mississippi Code of 1942, Rec., provides:
"Any person who shall remove, or cause to be removed, or aid or assist in removing from the county in which it may be, any personal property which may be the subject of a pledge, mortgage, deed of trust, conditional sales contract, lien of a lessor of lands, or lien by judgment, or

concealment of assets subject to a lien (including a judgment lien) a criminal offense of larceny. The lower court held that the allegations of concealment in the Bill of Complaint were sufficient to bring the answer within the constitutional privilege against self-incrimination, and that this privilege did extend to an answer in Chancery.[6] However, the Court rejected the refused disclosure demanded in Paragraph IX of the Bill on the ground that there had been a specific contractual waiver of the Constitutional privilege under the terms of the "Shively" bond application which provided that Morgan would present a financial statement, on request, to the two sureties, including U.S.F. & G.

At the conclusion of the hearing in Chancery Court, the Court held that the action was properly brought; that a course of conduct was shown indicating Morgan's concealment of assets; that the case did not justify an injunction requiring Morgan to pay the judgment on pain of contempt; that Complainant was entitled to a full discovery of the identity, status and location of Morgan's assets of every kind, including the names of persons having possession, custody or control thereof; that a receiver should be appointed for collection of his assets; that Morgan should be enjoined from disposing of any assets which might be owned by him; that he be required to furnish a financial statement, and whether this be done by a statement by way of discovery or by financial statement was immaterial. A Final Decree dated August 7, 1967 was signed and filed in accordance with the above opinion, from which Morgan appealed to the Missis-

sippi Supreme Court, which affirmed the lower court.[7]

Paragraphs 6 and 7 of the above Decree adjudicated that U.S.F. & G. was entitled to have Morgan specifically perform his agreements and directed Morgan to furnish U.S.F. & G. with a financial statement in a specified form and a written statement showing certain specified information in regard to his assets and current financial position. In addition, the Decree appointed a general receiver to demand, collect and receive all the assets of Morgan for the purpose of enforcing compliance with the previous 1965 Decree. The 1967 Decree also required Morgan to transfer all of his assets to the general receiver, and he executed a quit-claim deed purportedly conveying all of his assets.

After the 1967 Final Decree had been entered, Morgan filed "Exceptions to Final Decree" in which he sought to invoke the privilege against self-incrimination as to Paragraphs 6 and 7 of the Decree respectively requiring him to furnish the written financial statement and the written information listing the nature, location and status of all his assets. After a hearing, the "Exceptions" were overruled. Morgan then obtained a stay of the enforcement Paragraphs 6 and 7 of the 1967 Decree pending his appeal therefrom to the Mississippi Supreme Court.

After the Mississippi Supreme Court affirmed the Decree of the Chancery Court in all respects and remanded the cause to the Chancery Court for further proceedings in accordance with the lower court's Decree of August 7, 1967, Morgan

any other lien of which such party has notice, without the consent of the holder of such encumbrance or lien, or who shall conceal or secrete such property, or who shall sell or dispose of the same or any part thereof without the consent of the mortgagee or beneficiary, or conditional vendor, whether any of these acts shall be done before or after the maturity of the debt secured by the lien, and shall not immediately discharge such encumbrance or lien or pay to the holder of such lien or encumbrance the value of such prop-

erty in event same is less than the amount of such lien or encumbrance, shall, upon conviction, be imprisoned in the county jail not more than one year, or be fined not exceeding the value of such property, or both."

6. See Bailey v. Muse, 227 Miss. 51, 85 So.2d 918 (1956).

7. Morgan v. U.S.F. & G., Miss., 222 So.2d 820 (1969).

petitioned the Mississippi Supreme Court for a rehearing which was denied on June 9, 1969. He then obtained from the Mississippi Supreme Court a stay of the enforcement of Paragraphs 6 and 7 of the Decree pending the filing of a Petition for Certiorari to the United States Supreme Court, which petition was filed and denied.[8] Nevertheless, Morgan persisted in his refusal to comply with Paragraphs 6 and 7 of the Decree of August 7, 1967, although he did on August 21, 1967 execute the above mentioned quitclaim conveying certain described assets to the receiver appointed by the Chancery Court.

U.S.F. & G. then filed a "Petition for Issuance of Citation for Civil Contempt" to enforce the provisions of the Decree of August 7, 1967. On February 20, 1970, the petitioner herein was cited to show cause why he should not be adjudged in civil contempt of the Chancery Court for failure and refusal to comply with the discovery ordered in Paragraphs 6 and 7 of the Final Decree. Morgan filed a response to this citation in which he claimed the privilege against self-incrimination based on the Fifth and Fourteenth Amendments, in view of Mississippi Code Sections 2250 and 2252 making it a misdemeanor to remove or conceal assets upon which a lien exists. After a full hearing was had in the contempt proceeding, in which both oral and documentary evidence were received, the Chancery Court on March 9, 1970 entered its Decree in which it set forth its findings of fact and conclusions of law and adjudged Morgan to be in civil contempt of court by reason of his failure and refusal to furnish to U.S.F. & G. and to file with the Clerk of the Court the written financial satement described in Paragraph 6 of the Decree and the written disclosure of assets required by Paragraph 7 thereof. Further, it was ordered that he be taken into custody by the Sheriff of Hinds County to be committed to the Hinds County Jail until he complied with the above order and that he be fined $50.-00 a day until he purged himself of contempt. Morgan's attorney and U.S.F. & G.'s attorney were present in open court when the Chancellor announced the above, ordered the Sheriff to arrest Morgan forthwith, and refused a request to stay the arrest.

When the respondent, D. C. Yearwood, Deputy Sheriff of Hinds County, was subsequently delivered two certified copies of the "Decree in Civil Contempt Proceedings" to be served upon Mr. Morgan, he proceeded to the law offices of Morgan's attorneys at their request to "handle the matter" in their office, where he found Morgan, his attorneys and a United States Deputy Marshal present. Yearwood placed the petitioner under arrest, and thereupon the United States Deputy Marshal served Yearwood with the Writ of Habeas Corpus and Order of this Court. Accordingly, Morgan was immediately released to the custody of the deputy marshal.

The legal questions to be resolved herein are: (1) whether at the time that Petitioner filed his petition herein, he was "in custody", a necessary prerequisite to the availability of federal habeas corpus relief; (2) whether the petitioner has exhausted his remedies available in the courts of the State of Mississippi, or stated differently, whether there is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect his rights; (3) whether the petitioner may, under the facts and circumstances of this case, invoke the privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States as a basis for refusing to comply with the state court Decree requiring him to furnish a financial statement to the intervenor and/or to furnish a written statement disclosing the location, status and nature of his financial assets; and (4) if the answer to the preceding question is in the affirmative, (a) whether petitioner has waived the privi-

8. Cert. den. 396 U.S. 342, 99 S.Ct. 106, 24 L.Ed.2d 93 (1969).

lege by failing to timely invoke it, and if not, (b) whether he is precluded from invoking the privilege through waiver, estoppel, or other conduct inconsistent with the exercise of the right, or by conduct showing an intention to waive it, or rendering it unjust to permit an exercise of the right; and (5) if petitioner is not precluded from invoking the privilege, whether he is exposed to any real and substantial hazard of incrimination by furnishing the written financial statement or the written statement disclosing the nature, location and status of his assets.

In considering these questions, this Court does so bearing in mind that they are federal questions to be decided by applicable federal standards and laws, as expressly agreed to by the parties herein in their briefs filed herein and as recognized by the Mississippi Courts.

I. *At the time that Petitioner filed his Petition herein, was he "in custody", a necessary prerequisite to the availability of federal habeas corpus relief?*

In order for habeas corpus to be available, the statute provides that the person seeking the writ must be "in custody." [9] Although Morgan had not been formally arrested or served with a copy of the Decree adjudging him to be in civil contempt of the Chancery Court at the time that the Petition for Writ of Habeas Corpus was filed herein, the Chancery Court had previously ordered that he be remanded to the custody of the Sheriff of Hinds County, and placed in jail until he purged himself of contempt, and thus his arrest had been directed. Subsequent to the filing of the petition herein and the issuance of the Writ of Habeas Corpus pursuant to the Order of this Court, Morgan was formally placed under arrest in his attorneys' office by the respondent

deputy sheriff, and it was at that time that the deputy sheriff was served with a copy of the habeas corpus Order and Writ by the deputy marshal.

It is axiomatic that actual physical custody or restraint is not required to confer habeas jurisdiction. Rather, the term is synonymous with restraint of liberty. The real question is how much restraint on one's liberty is necessary before the right to apply for the writ comes into play. The courts have long recognized that the writ is applicable to confinement under criminal and civil process.[10]

It is clear however, that something more than moral restraint is necessary to make a case for habeas corpus.[11] The Court of Appeals for the Fifth Circuit has held in Marden v. Purdy [12] that an applicant who was free on bond was sufficiently "in custody" so as to satisfy the requirement for bringing a petition for the writ of habeas corpus. Also, the United States Supreme Court has held that if a prisoner has been released on parole, he is still "in custody" for purposes of habeas corpus.[13] Likewise, if he has been released on probation, he is said to be in custody.[14] In Foster v. Gilbert, a United States District Court held that an applicant who had been released to the custody of his attorney was sufficiently "in custody" to confer habeas corpus jurisdiction.[15] In *Foster*, the District Court, relying on *Jones* stated that there are other restraints of a man's liberty, restraints not shared by the public generally, which are sufficient to support the issuance of habeas corpus, and that this writ has never been a static, narrow, formalistic remedy, but to the contrary, its scope has grown to achieve its purpose, that is, the protection of individuals against erosion of their right to be free from wrongful restraints upon

9. 28 U.S.C.A., Section 2241.

10. Wales v. Whitney, 114 U.S. 564, 571, 5 S.Ct. 1050, 29 L.Ed. 277 (1885).

11. Ibid.

12. 409 F.2d 784 (C.A. 5, 1969).

13. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

14. Benson v. California, 328 F.2d 159 (9 Cir., 1964).

15. Foster v. Gilbert, 264 F.Supp. 209 (D.C.S.D.Fla., 1967).

their liberty. The Court further held that while the petitioner had been released from arrest in the custody of his attorney, and such release freed him from immediate physical imprisonment, it imposed conditions which significantly confined and restrained his freedom, and that was enough to constitute "custody".

In Ex Parte Fabiani [16] the petitioner was a medical student studying abroad who received a letter from the United States Attorney informing him that if he did not return by a certain date to report for induction into the military, he would be indicted. The District Court held that the petitioner was in "constructive custody" of the government and that habeas corpus would lie. In a recent case the Fifth Circuit, in Capler v. City of Greenville, Mississippi,[17] held that a state defendant who had been released on an appeal bond was sufficiently "in custody" to entitle him to seek federal habeas corpus relief. In Jones v. Cunningham, *supra*, the Supreme Court further defined the meaning of "custody" as follows:

> "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus.
>
> " * * * What matters is that they significantly restrain petitioner's liberty to do those things which in this

country free men are entitled to do. Such restraints are enough to invoke the help of the 'Great Writ.'" 371 U.S. at 240, 243, 83 S.Ct. at 376, 377.

The trend in the case law is clearly that of taking more and more serious any restraints that are imposed on a person's liberty, inasmuch as this great constitutional remedy is designed to protect individuals against erosion of their right to be free from wrongful restraints of any type upon their liberty.[18] This view was taken by the Court in *Foster* wherein the District Court stated that were it to hold that the petition must fail because the petitioner was not physically imprisoned, this would merely be upholding a technical defense which would no longer be available to respondents if petitioner's attorneys surrendered him to the authorities, whereupon undoubtedly he would file a second petition.

In view of the foregoing, this Court finds that the petitioner was "in custody" at the time that he filed his petition for Writ of Habeas Corpus herein. So, we move along to the next issue.

II. *Has the Petitioner exhausted his remedies available in the Courts of the State of Mississippi, or is there either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect his rights?*

The respondent and defendants contend that Morgan has not exhausted his state court remedies as required by 28 U.S.C.A. 2254.[19]

16. 105 F.Supp. 139, 148 (E.D.Pa.1952).

17. 422 F.2d 299 (C.A. 5, 1970).

18. See Fay v. Noia, 372 U.S. 391, 425, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). See also United States ex rel. Meadows v. State of New York, 426 F.2d 1176, 1179 (C.A. 2, 1970) in which the Court of Appeals for the Second Circuit held that a parole detainer warrant issued by state authorities to have the petitioner delivered subsequent to the expiration of his federal sentence constitutes sufficient custody to render the remedy of habeas corpus available to challenge the state

conviction; that the district court of the district within which petitioner had been sentenced had jurisdiction over habeas corpus petitions challenging future custody resulting from that sentence although the petitioner was presently incarcerated in an out of state district.

19. 28 U.S.C.A., Sec. 2254 provides:
"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of avail-

The Habeas Corpus Order signed by the Chief Judge of this District granted to petitioner the right to appeal his civil contempt decree here under attack to the Mississippi Supreme Court, the highest appellate court of the State of Mississippi. Petitioner, subsequent to the filing of his petition for habeas corpus herein, did perfect his appeal to the State Supreme Court pursuant to Section 1152 of Mississippi Code of 1942, Rec.[20] This section applies both to civil contempt and criminal contempt and gives the State Supreme Court a much broader than usual review of the decision of the trial court by empowering it to review the case and decide for itself whether there has been an actual contempt of court and fixes a specific nominal appeal bond not to exceed $300.00, which supersedes any punishment imposed.[21] The petitioner has executed and filed a supersedeas appeal bond in the state court in connection with his presently pending appeal.

It is a firmly established principle of federal law that ordinarily an application for habeas corpus by one detained pursuant to state authorities will not be entertained until all available state remedies, including all appellate remedies in the state courts, have been exhausted.[22] It is unquestioned today that the exhaustion provision "is not one defining power but one which relates to the appropriate exercise of power."[23] As stated in Fay v. Noia,[24] "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct the constitutional violation * * *" A solution was found in the doctrine of comity between courts, the doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter. Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761, 767 (1950); King v. Cook, 287 F.Supp. 269 (N.D.

---

able State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

20. Section 1152, Mississippi Code of 1942, Rec., provides: "A person ordered by any tribunal, except the Supreme Court, to be punished for a contempt, may appeal to the court to which other cases are appealable from said tribunal, and may supersede any fine imposed, by the execution of a bond, payable to the state, with two sufficient sureties, to be approved by the tribunal appealed from, in a penalty to be fixed by said tribunal, not exceeding three hundred dollars, conditioned to pay the fine and costs, in case of affirmance in whole or in part; and the appellant shall be entitled to bail in such cases upon the execution of an appearance bond, with two or more such sureties, in the penalty of three hundred dollars, payable to the state, conditioned to appear in the court to which his appeal is prosecuted and to

abide the result of such appeal, which may be approved by the sheriff or other officer in whose custody the appellant may be; and on such appeal the question shall be whether the appellant was guilty of contempt; and the sentence or decree or order of the court below may be affirmed, reversed, annulled, or modified, according to the judgment of the appellate court. All such appeals shall be tried on the record, and the presiding officers of all tribunals condemning any person for contempt shall, within one day thereafter, sign bills of exception, if demanded, showing all the facts and evidence upon which such judgment was predicated."

21. See Bryant v. Associates Discount Corp., 251 Miss. 1, 167 So.2d 657 (1964); Ballew v. Case, 232 Miss. 183, 98 So.2d 451 (1957).

22. Wilson v. Beto, 415 F.2d 774 (C.A.5, 1969); Daniels v. Nelson, 415 F.2d 323 (C.A.9, 1969), reh. den.; cert. den., 396 U.S. 994, 90 S.Ct. 494, 24 L.Ed.2d 459; United States ex rel. Bagley v. LaVallee, 332 F.2d 890 (C.A.2, 1964).

23. Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939).

24. 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Miss., 1968). One commentator has succinctly stated it this way:

> "The *principal* requirement is that, if the doors of the state courts and the federal courts are both currently open, a state prisoner ought to try the state door first." [25]

The Fifth Circuit has recently stated that although the exhaustion principle is one of comity and not jurisdiction, that for a federal court to assume jurisdiction by habeas corpus of a case that was appealed to the state supreme court more than four months after the filing of the petition for habeas corpus in the federal district court would run directly contrary to the rationale that state tribunals should be afforded the initial opportunity to correct alleged abuses of constitutionally protected rights within their respective jurisdictions; and that absent exceptional circumstances it is incompatible with an orderly system of state and federal administration of criminal justice to allow an individual in state custody to proceed at the same time with two different remedies to secure his release.[26]

It has been held that the burden is upon the petitioner in such a situation to affirmatively set forth in his petition for habeas corpus what remedies he pursued in the state court and a justification, if any exists, for his failure to pursue any other state court remedy, and thus the burden is not upon the respondent to point out the state court remedies of which petitioner failed to avail himself.[27]

The prohibition of Section 2254 is mandatory, but it is apparent that there are two exceptions to the general requirement that state remedies be exhausted, namely (1) when there is an absence of available state corrective process, or (2) the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.[28] The first exception is self-explanatory.[29] The rationale underlying the second exception is that a petitioner should not have to engage in an exercise in futility before he can come into federal court. This goes back to the foundations of the entire exhaustion doctrine, namely, to give the state courts the first opportunity to rule on a petitioner's contention. It is not intended to frustrate relief in the federal courts, and is in line with the Supreme Court's language in Fay v. Noia [30] that "our decision today affects all procedural hurdles to the achievement of swift and imperative justice on habeas corpus * * *" [31] Stated another way, application to the state courts should not be necessary if it is reasonably clear that the state will refuse to take cognizance of the claim; the timely resolution of federal rights, as well as considerations of efficiency,

---

25. Reitz Federal Habeas Corpus: Impact of an Abortive State Proceeding, 74 Harv. L.Rev. 1315, 1364 (1961). See also Lynch v. Field, 415 F.2d 776 (C.A.9, 1969) in which the court stated: "Nonetheless, he is asking both federal and state courts simultaneously to set aside the same conviction. If the federal courts worked on the same conviction at the same time as the state, it would be most unseemly. We are not required to do it and we will not do it." To the same effect is Daniels v. Nelson, 415 F.2d 323 (C.A.9, 1969) and Perry v. Decker, 415 F.2d 773 (C.A.5, 1969).

26. Ames v. Middlebrooks, 369 F.2d 113 (C. A.5, 1966), cert. den. 386 U.S. 967, 87 S. Ct. 1050, 18 L.Ed.2d 119 (1967).

27. Id. at 115; Thompson v. Overlade, 216 F.2d 492, 493 (C.A.7, 1954).

28. Evans v. Cunningham, 335 F.2d 491, 493 (C.A.4, 1964); Sokol, A Handbook of Federal Habeas Corpus, Section 23, p. 119 (1965).

29. United States ex rel. Kelly v. Maroney, 414 F.2d 1228, 1230 (C.A.3, 1969).

30. 372 U.S. 391, 435, 83 S.Ct. 822, 847, 9 L.Ed.2d 837 (1963).

31. See also concurring opinion of Mr. Justice Rutledge in Marino v. Ragen, 332 U.S. 561, 564, 68 S.Ct. 240, 92 L.Ed. 170 (1947); but cf. Ralph v. Pepersack, 203 F.Supp. 752, 754 (D.Md.1962).

should outweigh what could only be termed compulsive comity.[32]

██ However, the doctrine of exhaustion of state remedies embodied in 28 U.S.C.A. § 2254 does not bar resort to federal habeas corpus if the petitioner has obtained a decision on his constitutional claims from the highest court of the state. Once the petitioner's constitutional contentions have been presented to the state court, it is not necessary to present them again by a different means.[33] Stated another way, it is now well established that once a claim has been adjudicated by a state's highest tribunal, that is ordinarily sufficient to permit a petitioner to seek federal habeas corpus redress without the necessity for successive rounds of state court litigation,[34] and he is not required to pursue alternate procedures for relief in the state courts based on the same grounds.[35] This principle holds true even though the highest court of the state could have based its decision on another ground.[36] The Fifth Circuit has held that federal constitutional questions unsuccessfully raised at the trial and upon appeal through all the state's courts need not be relitigated by state habeas corpus or other post-conviction remedies as a prerequisite to an application for habeas relief to a federal district court.[37] So also, it has been held that a petitioner should not be required to pursue state remedies as a prerequisite to filing federal habeas corpus petition when the exact constitutional point being raised

has been previously decided adversely to his contention by the highest court of that state in another case.[38]

██ The constitutional questions presented by petitioner herein as his bases for relief were specifically and clearly raised before the Mississippi Supreme Court in his previous appeal of the 1967 Chancery Court Decree.[39] The Mississippi Court stated:

"The second predominant question of the suit is concerned with whether the constitutional privilege against self-incrimination afforded under the Fifth and Fourteenth Amendments to the Constitution of the United States and under Article 3, Section 26 of the Mississippi Constitution of 1890 applies in civil actions for discovery or to enforce disclosures under a bill of complaint which requires answer under oath, and which is directed by a final decree. If the constitutional privilege is applicable, we must also reach the question of whether it was waived through estoppel."

Although the state Supreme Court upheld the Chancellor's ruling granting Morgan the right to claim the privilege not to answer under oath the allegations of the Bill of Complaint charging that he concealed his assets and resorted to other devices for the purpose of hindering, delaying and defrauding the appellee, U.S.F. & G., of its rights as a judgment creditor in view of Sections 2250 and 2252 of the Miss.Code of 1942, Rec., the former making it a criminal act to

32. Note, Federal Habeas Corpus for State Prisoners: The Isolation Principle, 39 N.Y.U.L.Rev. 78, 99 (1964).

33. Brown v. Allen, 344 U.S. 443, 447–450, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Roberts v. LaVallee, 389 U.S. 40, 42–43, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); Connors v. State of South Dakota, 422 F.2d 122 (C.A.8, 1970), cert. den., 398 U.S. 954, 90 S.Ct. 1881, 26 L.Ed.2d 297; Capler v. City of Greenville, Mississippi, 422 F.2d 299 (C.A.5, 1970); Mezzatesta v. Anderson, 227 F.Supp. 267, 269 (D.Del. 1964).

34. Grundler v. State of North Carolina, 283 F.2d 798, 800 (C.A.4, 1960).

35. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); United States ex rel. Frinks v. Barwick, 331 F.2d 597, 598 (C.A.4, 1964).

36. Irvin v. Dowd, 359 U.S. 394, 406, 79 S. Ct. 825, 3 L.Ed.2d 900 (1959); Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L. Ed. 1647 (1948).

37. Hill v. Beto, 390 F.2d 640, 641 (C.A.5, 1968).

38. Hayes v. Boslow, 336 F.2d 31, 32 (C.A. 4, 1964); Evans v. Cunningham, 335 F.2d 491, 493–494 (C.A.4, 1964).

39. Morgan v. United States Fidelity & Guaranty Co., 222 So.2d 820 (1969).

remove property subject to liens out of the state or out of the county without consent or with intent to defraud, and the latter making it a crime to conceal assets subject to a lien, the Court specifically stated that it did not reach the broad question of the application of the principles to the other aspects of the suit, that is, discovery of assets subject to the lien or testimony as to the location thereof, since it was not necessary to its opinion and ruling in view of its subsequent holding that there was a waiver of the privilege.[40] Although the exhaustion of remedies doctrine did not require appellant therein, petitioner herein, to seek certiorari in the United States Supreme Court before seeking this habeas corpus relief herein,[41] nevertheless he did unsuccessfully petition therefor.

The petitioner in this case plainly invoked all available state remedies and obtained a final determination of his constitutional claim from the Mississippi Supreme Court. This Court therefore holds that this case is governed by the principle that the doctrine of exhaustion of state remedies embodied in 28 U.S.C. Sec. 2254 does not bar resort to federal habeas corpus herein because petitioner's contentions herein have been before the Mississippi Supreme Court for decision and question of waiver at least has been decided adversely to the petitioner. In view of the foregoing authorities, it is not necessary for plaintiff to await the Mississippi Supreme Court's review of his appeal from his adjudication of civil contempt which is now pending inasmuch as the precise questions on which he bases his appeal have been adversely decided by that court. Furthermore, it is extremely doubtful that the Mississippi Supreme Court which is composed of the same members which affirmed the foregoing appeal would decide the issues any differently.

█ Even if this Court were in error in its above determination, 28 U.S.C. Sec. 2254 prohibits the *granting* of a Writ of Habeas Corpus prior to the exhaustion of remedies available in the courts of the state, but does not forbid *denial* of a petition for the "Great Writ" on its merits though state remedies may not be exhausted.[42]

Having concluded that this Court has jurisdiction of this habeas corpus action, it is now necessary to decide the merits of the relief sought herein by examining the following remaining questions: may the petitioner under the facts and circumstances of this case, invoke the privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States as a basis for refusing to comply with the state court decree requiring him to furnish a financial statement to the intervenor and/or to furnish a written statement disclosing the location, status, and nature of his financial assets; if the answer to the preceding question is in the affirmative, (a) whether petitioner has waived the privilege by failing to timely invoke it, and if not (b) whether he is precluded from invoking the privilege through waiver, estoppel, or by conduct inconsistent with the exercise of the right, by conduct showing an intention to waive it, or rendering it unjust to permit an exercise of the right; and, if petitioner is not precluded from invoking the privilege, whether he is exposed to any real and substantial hazard of incrimination by furnishing the written financial statement and/or the written statement disclosing the location and nature of his assets.

III. *May the petitioner under the facts and circumstances of this case, invoke the privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amndments to the Constitution of the United States as a basis for refusing to comply with the state court decree requiring him*

---

40. Morgan v. United States Fidelity & Guaranty Co., *supra* at 829.

41. Fay v. Noia, 372 U.S. 391, 435–438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

42. Hill v. Beto, 390 F.2d 640, 641 (C.A.5, 1968); U. S. ex rel. Kelly v. Maroney, *supra*, 414 F.2d at 1231.

*to furnish to the intervenor a financial statement and/or a written statement disclosing the location, status and nature of his financial assets?*

The above question, phrased another way, is whether the Constitutional privilege against self-incrimination afforded by the Fifth and Fourteenth Amendments to the Constitution of the United States applies in civil actions brought to require production of the above written instruments reflecting information concerning a judgment debtor's assets, as directed by a final decree of a court of competent jurisdiction.

Although some repetition results, in view of the importance of the peculiar facts of this case it is necessary to briefly as possible state the history and factual background of this litigation in some detail while attempting to avoid unnecessary repetition of what has heretofore been set forth.

The petitioner contends that he is entitled to invoke the constitutional privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States by virtue of the fact that Sections 2250 and 2252 of the Miss.Code of 1942, Rec., make the removal or concealment of assets subject to a judgment lien, the crime of larceny. He further contends that he is entitled to invoke the privilege against self-incrimination inasmuch as any evidence or information furnished by him might disclose that he did not quit-claim and deliver to the receiver *all* of his assets as required by the Decree, and thus would subject him to punishment for criminal contempt by the Chancery Court.[43]

Petitioner, an astute and experienced businessman, on January 1, 1958 formed a partnership with R. W. Hyde, Jr. in order to lend his considerable assets to Hyde's growing contracting business to enable Hyde to secure payment and performance bonds from various surety companies including the intervenor herein. Thus, it became possible for Hyde to secure additional large construction contracts which he had found it difficult to do because of his limited financial capability. The intervenor, U.S.F. & G. began writing bonds for Morgan and Hyde, and Morgan furnished it his financial statements for the years 1956, 1957 and 1958, each of which showed he had a personal net worth substantially in excess of three million dollars. The Mississippi Supreme Court, in accordance with the Chancellor's findings of fact, found that U.S.F. & G., acting in reliance on the combined net worth and assets of Morgan and Hyde, was induced to write surety bonds on numerous construction projects involving many millions of dollars, and in each and every one of the twelve bonds in question, Morgan voluntarily and specifically bound himself to protect, reimburse, indemnify and exonerate U.S.F. & G. from any loss whatsoever on account of its suretyship and expressly agreed to place U.S.F. & G. in funds with which to pay creditors on the projects.[44] Morgan executed indemnity agreements on the negotiated jobs under an agreement with Hyde that he would receive a commission of 2½% of the contract price for acting as indemnitor or guarantor, which he actually received in the amount of many thousands of dollars.[45]

In connection with a large sewerage system construction contract for the City of Shively, Kentucky, Morgan likewise entered into an indemnity agreement with U.S.F. & G. and another co-surety, who wrote the surety bond on the above

43. Section 1278, Miss. Code of 1942, Rec., dealing with criminal contempt reads as follows: "The chancery court or the chancellor in vacation, or judge granting the writ, shall have power to punish any person for breach of injunction, or any other order, decree, or process of the court, by fine or imprisonment, or both, * * *"

44. See Morgan v. United States Fidelity & Guaranty Co., 191 So.2d at 923.

45. See Morgan v. United States Fidelity & Guaranty Co., *supra*, at 923.

project, whereby he represented that his assets would be available for indemnification and further specifically agreed to furnish to the sureties financial statements showing his current financial position when requested to do so. This application also provided that it should be "liberally construed so as to fully protect and indemnify" U.S.F. & G.

It is the position of the respondents and intervenor herein that compliance by the petitioner with the production requirements of the Chancery Court Decree would present no real, apparent and appreciable hazard of self-incrimination by merely being required to furnish these statements; that he has waived the privilege by failing to timely invoke it as a defense to specific performance before the rendition of the final decree against him in the Chancery Court of Hinds County, Mississippi; and if not correct in either of the above two assertions, that based upon all of the facts of this case, including Morgan's specific agreements and his affirmative conduct, that he has waived and is estopped from claiming his constitutional right against self-incrimination under the Fifth and Fourteenth Amendments in this civil case.

▆▆▆▆ In deciding these issues, this Court, as did the Mississippi Supreme Court, recognizes that these questions are federal questions controlled by federal standards and should be scrupulously applied in making this determination.[46] It is well established that the denial by the United States Supreme Court of certiorari from the decision of a state court is to be given no effect whatsoever by a federal court in determining the petitioner's right to be discharged in a habeas corpus proceeding.[47] Neither

does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question.[48] Where the state court has reliably found the relevant facts, the United States District Court may defer to the state court's findings if fairly supported by the record, but may not defer to its findings of law, it being its duty to apply the applicable federal law to the state court fact findings independently.[49]

However, the United States Supreme Court has expressly held that a United States District Court is vested with a large measure of discretion in determining the weight to be given the prior state court adjudication. The Supreme Court has likewise held that the state court adjudication "carries the weight that federal practice gives to the conclusion of a court of last resort of another jurisdiction on federal constitutional issues." Brown v. Allen, *supra*; Fay v. Noia, *supra.*

In this case, the petitioner has the burden of demonstrating that his constitutional rights have been infringed by the state court decision.[50]

It is firmly established that state courts are bound by the Fifth Amendment by force of the Fourteenth Amendment and by the standards enunciated by the federal courts.[51]

▆▆▆ We turn now to the issue of whether the petitioner-judgment debtor's claim of privilege is well taken. We start with the basic proposition that the Fifth Amendment's protection against compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the states. The

46. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

47. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Fay v. Noia, *supra,* note 46.

48. Fay v. Noia, *supra,* note 46; E. G. Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L. Ed. 1367 (1945); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705

(1967); Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

49. Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L.Ed.2d 770 (1963).

50. Irving v. Breazeale, 400 F.2d 231, 236 (C.A.5, 1968).

51. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty for such silence. What is accorded is the privilege of refusing to incriminate one's self, and the feared prosecution may be by either federal or state authorities.[52] The rights relating to this constitutional privilege is a federal question to be determined by federal standards.[53]

■ The constitutional privilege against self-incrimination extends to all judicial official hearings, investigations, or inquiries where persons are called upon formally to give testimony. A judicial proceeding in a civil or criminal witness thus has this protection in a case, barring any deposition or hearing therein, or an investigation or hearing by a grand jury, legislative committee, or an administrative official or board.[54] Also, the privilege belongs to the guilty as well as the innocent.[55] More specifically, the privilege has been applied to discovery.[56] In *Boyd,* a case dealing with seizure and forfeiture of property alleged to have been fraudulently imported without the payment of duties, the United States Supreme Court stated:

"Now it is elementary knowledge that one cardinal rule of the court of chancery is never to decree a discovery which might tend to convict a party of a crime, or to forfeit his property. And any compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of crime, or to forfeit his property, is contrary to the principles of a free government * * * " (116 U.S. 632, 6 S.Ct. 533).

■ While the central standard for the application of the privilege is that the person claiming it is confronted by substantial, real and apparent, as distinguished from trifling or imaginary, hazards of incrimination,[57] the liberality with which the privilege is viewed by federal standards is reflected by the United States Supreme Court's opinion in Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951), wherein it was held that the privilege could be validly claimed where an answer to an interrogatory could possibly tend to incriminate or could possibly furnish a link in a chain of circumstances which might lead to criminal prosecution. In *Hoffman,* the Court stated:

"This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure. Counselman v. Hitchcock, 142 U.S. 547, 562, [12 S.Ct. 195, 197, 35 L.Ed. 1110], (1892); Arndstein v.

---

52. Ibid; Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed. 2d 678 (1964).

53. Malloy v. Hogan, *supra,* 378 U.S. at p. 11, 84 S.Ct. 1489, 12 L.Ed.2d 653; Chapman v. California, *supra.*

54. McCormick on Evidence, Par. 123, p. 259 (1924); United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1, (1970); Gardner v. Broderick, 392 U.S. 273, 276, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924); Counselman v. Hitchcock, 142 U.S. 547, 562–564, 12 S.Ct. 195, 35 L.Ed. 1110; Boyd v. United States, 116 U.S. 616, 633–635, 6 S.Ct. 524, 29 L.Ed. 746 (1886); United States v. Saline Bank, 1 Pet. 100,

104, 7 L.Ed. 69; 8 J.Wigmore, Evidence, Sec. 2257, at pp. 339–340 (McNaughton, Rev.1961); See also Bailey v. Muse, 227 Miss. 51, 85 So.2d 918, 923 (Miss.1956).

55. See Brock v. United States, 223 F.2d 681 (C.A. 5, 1955).

56. Arndstein v. McCarthy, *infra*; United States v. Kordel, *supra*; Boyd v. United States, *supra*; United States v. Saline Bank, *supra*; Curcio v. United States, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957); Bailey v. Muse, *supra,* note 54.

57. See Marchetti v. United States, 390 U.S. 39, 53, 61, 88 S.Ct. 697, 19 L.Ed.2d 889, 901, 905 (1968); Brown v. Walker, 161 U.S. 591, 599–600, 16 S.Ct. 644, 40 L.Ed. 819, 822 (1896).

McCarthy, 254 U.S. 71, 72–73, [41 S. Ct. 26, 65 L.Ed. 138] (1920).

"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. (Patricia) Blau v. United States, 340 U.S. 159 [71 S.Ct. 223, 95 L.Ed. 170] (1950). But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Mason v. United States, 244 U.S. 362, 365 [37 S.Ct. 621, 622, 61 L.Ed. 1198] (1917), and cases cited. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, Rogers v. United States, 340 U.S. 367 [71 S.Ct. 438, 95 L.Ed. 344] (1951), and to require him to answer if 'it clearly appears to the court that he is mistaken.' Temple v. (1881). However, if the witness upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

To the same effect is United States v. Costello, 198 F.2d 200, 202 (C.A.2, 1952).

■ Applying the above standards to the case sub judice, unlike the situation which existed in Kirtley v. Abrams, 184 F.Supp. 65 (U.S.D.C.N.Y., 1960)

which merely dealt with a judgment creditor attempting to locate assets of the judgment debtor for satisfaction of its judgment, here, despite the fact that the petitioner, in compliance with one requirement of the Chancery Court decree, conveyed by quit claim to the receiver what purported to be *all* of his assets, the intervenor herein then filed this contempt proceeding to require further discovery, taking the position that petitioner owns other assets which he failed and refused to disclose and convey pursuant to the order. By attempting to force the petitioner to furnish a financial statement and to give a statement in writing setting forth the identity, status, location and custody of his assets, the respondent apparently takes the position that the petitioner has concealed some of his assets subject to the judgment lien or has removed them from Hinds County or the State of Mississippi without intervenor's permission, which, in either event, would subject petitioner to prosecution for the crime of larceny under Sections 2250 and 2252 of the Mississippi Code. In fact, the respondent charges that petitioner has concealed some of his assets in order to avoid the judgment lien imposed thereon. Furthermore, petitioner contends that the information sought might tend to prove, or at least the intervenor hopes and in effect represents that it will prove, that petitioner did not comply with the order of the Chancery Court to convey *all* of his assets to the receiver, thus subjecting him to criminal contempt, which is in all respects equivalent to any other crime.[58] In this setting it is not *perfectly clear*, from a careful consideration of all the circumstances in this case, that the required disclosure by the petitioner *cannot possibly* have such tendency to incriminate. See Hoffman v. United States, 341 U.S. 479, 488, 71 S. Ct. 814, 95 L.Ed. 1118.

IV. *Has the petitioner waived the privilege by failing to timely invoke it, and if not, is he precluded from in-*

58. Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

voking the privilege through waiver, estoppel, or by conduct inconsistent with the exercise of the right, by conduct showing an intention to waive it, or rendering it unjust to permit an exercise of the right?

The respondents and intervenor contend that the petitioner waived his privilege by failing to timely raise it in the state courts by virtue of the fact that in his defense in the 1967 case,[59] petitioner did not plead the privilege as a defense for his refusal to furnish a financial statement required by his agreement with U.S.F. & G. but simply pleaded res judicata based upon the Mississippi Supreme Court's affirmation in the "parent case"; [60] that the 1967 suit expressly sought specific performance of Morgan's agreement to furnish the financial statements and that he failed to raise the self-incrimination defense or issue prior to the entry of the final decree of August 7, 1967, but raised it for the first time after the final decree had been entered through the filing of "Exceptions to the Final Decree".

■ The respondents and intervenor rely on the opinion of the United States Supreme Court in United States ex rel. Vajtauer v. Commissioner of Immigration,[61] in which the Court held that the privilege against self-incrimination may not be relied on and must be deemed waived "if not in some manner fairly brought to the attention of the tribunal which must pass upon it." [62] Unlike the situation in Vajtauer and Kordel, in the case sub judice the petitioner did forcefully bring to the attention of the trial court, the Chancery Court of Hinds County, Mississippi, his claimed privilege against self-incrimination, and the court conducted a hearing on this plea and granted his right to refuse to answer the allegation concerning the concealment of assets, but did order him to furnish the financial statements and the further written evidence of the location, identity, status and custody of his assets.[63] Therefore, although the privilege could have been claimed at an earlier stage of the proceeding in the state court, it was nevertheless squarely presented to and decided by the Chancery Court and has been urged by the petitioner at each and every stage of the proceeding thereafter. Thus the contention of the respondents and intervenor that the privilege was waived by virtue of the fact that it was not timely raised and urged is without merit and rejected by this Court.

Having determined that the privilege against self-incrimination afforded by the Fifth and Fourteenth Amendments to the Constitution of the United States is applicable to the discovery required by the final decree of the state court, it now devolves upon this Court to determine whether this constitutional privilege was waived through estoppel, as was held by the Mississippi Supreme Court.[64]

The question of waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law.[65]

■■ Although a person may, by his acts, or omission to act, waive a constitutional right or provision, being unable thereafter to claim protection under it, or may be estopped to claim this privilege, at least if no public rights or interests, such as matters of public policy or morals are involved,[66] particularly by conduct rendering it unjust to permit the

59. 222 So.2d 820.

60. Morgan v. United States Fidelity & Guaranty Co., 191 So.2d 917 (1966).

61. 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560, 566 (1927).

62. See also United States v. Kordel, supra.

63. 222 So.2d 820, 829.

64. 222 So.2d 820, 828–833.

65. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

66. 16 C.J.S. Constitutional Law § 89, pp. 264–265.

assertion thereof,[67] there is nevertheless a presumption against the waiver thereof, and for a waiver to be effective it must be clearly established that there was an intentional and voluntary relinquishment or abandonment of a known right or privilege.[68] So also, the doctrine of estoppel as applied to the right to question the constitutionality of a statute or the benefit of a constitutional right is not applied solely on technicalities, but must rest on substantial grounds of prejudice or change of position.[69]

In determining whether there has been any waiver of, or estoppel to claim, the privilege against self-incrimination afforded by the Fifth and Fourteenth Amendments in the case sub judice, it is necessary to look to the peculiar facts hereof and discuss them in the light of the foregoing standards and hereinafter mentioned authorities.

As previously stated in this opinion and as found as a fact by the Mississippi Supreme Court, which finding this Court accepts and agrees with, U.S.F. & G. was induced to write the performance and payment bond in excess of two million dollars on the Shively, Kentucky project by virtue of the fact that the petitioner herein with his large amount of assets, had, by letter, expressly obligated himself to the terms and conditions of the application for the Shively performance and payment bond and indemnity agreement "just as though I were named as one of the applicants therein and my signature were duly affixed thereto." [70] The application for the bond in question, the provisions of which also made the petitioner an indemnitor of U.S.F. & G., reads in part as follows:

"Tenth: A representative of the sureties shall have access at all reasonable times and places to the books and records of the said applicants and to correspondence with the representatives of said Obligee and shall be entitled to receive full information from the applicants and the banks of deposit of said applicants and shall be given such information as such representatives shall request, all as the same relate to the construction work to be performed by the applicants in connection with the contracts hereinbefore mentioned * * * In addition to the above information to be furnished from, and the right given to the Sureties to examine, the books, records, correspondence and bank accounts of applicants as the same relate to said above mentioned contract, applicants and any of them will furnish to Sureties, upon request and at such reasonable intervals of time as Sureties may designate, financial statements showing the current financial position of the applicant of whom such request for a statement is made." [71]

---

67. United States v. Nudelman, 104 F.2d 549 (C.A.7, 1939) cert. den. 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493; 16 C.J.S. Constitutional Law § 89, p. 267.

68. Brookhart v. Janis, 384 U.S. 1, 4, 86 S. Ct. 1245, 16 L.Ed.2d 314 (1966); Glasser v. United States, 315 U.S. 60, 70–71, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); 16 C.J.S. Constitutional Law § 89, p. 267.

69. State ex rel. Johnson v. Consumers Public Power Dist., 143 Neb. 753, 10 N.W.2d 784, 152 A.L.R. 480.

70. The body of this letter reads as follows: "Attached is 'Application for Performance and Payment Bonds and Indemnity Agreement' on Form No. 1 duly executed by R. W. Tyler Company, Inc., a Kentucky corporation, Louisville, Kentucky and R. W. Hyde, Jr., an individual d/b/a Hyde Construction Company, Jackson, Mississippi. "In consideration of your executing as co-sureties the above described bond or bonds, I hereby agree as follows: "That the signing and furnishing of this letter obligates me to the terms and conditions of the enclosed 'Application for Performance and Payment Bonds and Indemnity Agreement' on Form No. 1 just as though I were named as one of the applicants therein and my signature were duly affixed thereto. /s/ E. E. Morgan." See Morgan v. United States Fidelity & Guaranty Company, *supra*, 222 So.2d at 831.

71. See Exhibit "B" to the Bill of Complaint. (Chancery Court Transcript— PR–1, Rsps. 2–I, p. 26).

With the assurance that Morgan, "an astute business man," [72] who knew, or should have known, that one of the terms of the application was that the surety would have access at all reasonable times to the books and records of the applicant, would furnish to sureties upon request, and at such reasonable intervals of time, as sureties may designate, financial statements showing his current financial position, and relying upon this assurance, U.S.F. & G., together with National Surety Corporation, wrote the $2,721,419.00 Performance and Payment Bond which enabled Morgan and Hyde to secure this large construction contract. It was this contract, along with others, that produced large financial gain for Morgan in addition to the 2½% commission he received by signing the bond applications as indemnitor or guarantor.

As previously stated, Hyde started having serious financial difficulties in 1961 arising at least in part from the Shively contract which resulted in judgments against U.S.F. & G., by laborers and materialmen in excess of two million dollars. It was these losses and payment of the judgments resulting that gave rise to the beginning of this litigation by U.S. F. & G. against petitioner Morgan and which resulted in an adjudication that he is obligated to perform each and every obligation assumed by him under the application.[73]

The Mississippi Supreme Court has held that the above mentioned letter and application gave rise to the equivalent of a fiduciary relationship, that of principal and surety, citing 59 Am.Jur., Sec. 221 (1944), and that the surety is entitled to be protected by his principal, in this instance, E. E. Morgan.[74] The Mississippi Court further held that it was not necessary to discuss or decide whether the technical requirements of a waiver or estoppel were complied with, but that the matter stood in the posture similar to that which existed in Shepard

v. Barron, 194 U.S. 553, 24 S.Ct. 737, 48 L.Ed. 1115 (1904), wherein the United States Supreme Court held that certain property owners had waived or were estopped to assert a denial of due process of law. In *Shepard*, the Supreme Court said:

> "Provisions of a constitutional nature, intended for the protection of the property owner, may be waived by him, not only by an instrument in writing, upon a good consideration, signed by him, but also by a course of conduct which shows an intention to waive such provision, and where it would be unjust to others to permit it to be set up.
>
> \*  \*  \*  \*  \*  \*
>
> " \* \* \* A defense of this nature and upon these facts need not be placed entirely upon the strict and technical principles of an estoppel. While it partakes very strongly of that character, it also assumes the nature of a contract, implied from the facts  \*  \*  \* It does not in the least matter what we may call the defense, whether it be estoppel or implied contract, or one partaking of the nature of both." 194 U.S. at 565 and 568, 24 S.Ct. at 741 and 742, 48 L.Ed. 1119–1121.

The State Supreme Court, after expressing doubt that in a civil proceeding it was ever intended that the privilege against self-incrimination could be transformed into an affirmative device whereby a judgment debtor can effectively thwart the processes of the Court under the peculiar circumstances of this case, held that the lower court did not err in finding that the appellant waived the right to assert the claim of constitutional privilege and that the trial judge was under no duty to broaden the privilege against self-incrimination to a point which would effectively place it beyond waiver. The Court principally rested its opinion on the following statements found in 8 Wigmore on Evidence, Sec. 2275

---

72. See 222 So.2d 820, 831 (1969).

73. Morgan v. United States Fidelity & Guaranty Co., 191 So.2d 917 (Miss.1966).

74. 222 So.2d 830.

(McNaughton Rev. 1961) where it is stated:

> "Waiver: (A) By contract. It has never been doubted that the privilege against self-incrimination, like all privileges (Sections 2196 and 2197, supra), is waivable. There are two possible ways of waiving: (a) by contract or other binding pledge before trial, or (b) by voluntarily testifying in the case (§ 2276 infra). As to the first of these ways, may a waiver be made irrevocably by contract before trial?
>
> "Unless the contract is one which by its circumstances has come within the doctrine of duress or oppression, and is thus voidable on general principles of contract, there is no reason in its present aspect why it should not be binding. The promise to waive may be embodied in an express contract or in a contract implied by the conduct of the parties. In either case, however, two distinctions should be drawn:
>
> (1) A bare contract to waive the privilege will not be enforced specifically. Rather, it will be enforced, where possible, by indirect sanctions similar to those (short of arrest and contempt) available to punish civil litigants who refuse to comply with orders to make discovery—e. g., dismissal of the action. Or the sanction may be loss of employment or of pension or of the right to do business with the government.
>
> (2) Where there are not only the ingredients of an express or implied contract to waive privilege but also a fiduciary relation or other elements of public policy making recognition of privilege unconscionable, the waiver of privilege may be specifically enforced and the witness held in contempt for failure to make disclosure * * *"

The State Supreme Court further stated that the above principles of waiver of constitutional privilege against self-incrimination by contract have been applied in what it considered a "strikingly similar situation" found in the United States Supreme Court's opinion in Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946), which held as follows:

> "As we have pointed out in Davis v. United States, ante, 328 U.S. 582, [66 S.Ct. 1256, 90 L.Ed. 1453] the law of searches and seizures as revealed in the decisions of this Court is the product of the interplay of the Fourth and Fifth Amendments. But those rights may be waived. And when petitioner, in order to obtain the government's business, specifically agreed to permit inspection of his accounts and records, he voluntarily waived such claim to privacy which he otherwise might have had as respects business documents related to those contracts." [75]

The Mississippi Court found that sufficient fiduciary obligations and questions of public policy existed under the circumstances of the case sub judice necessary to furnish the prerequisites to the estoppel found in Zap, to uphold the judgment of the lower court which held that the appellant specifically waived the privilege.

As previously stated, it is well established that constitutional rights may be waived. In Alabama Cartage Co. v. International Brotherhood, 250 Ala. 372, 34 So.2d 576 (1948), the Alabama Supreme Court stated the following:

> "A party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved, and, having once done so, he cannot subsequently invoke its protection. (cited cases are omitted) * * * The right to picket protected by the provisions of the constitution relating to freedom of speech is a private, individual right, which

75. 328 U.S. at 628, 66 S.Ct. at 1279.

may be waived and was waived by the individuals constituting the local organization by entering into and becoming parties to the contract (collective bargaining agreement) which protected the complainant from strikes and they are estopped to exercise this right in connection with a strike which they participated in calling, in violation of the terms of said contract." 34 So.2d at 579, 580.

So also, the United States Supreme Court in Wall v. Parrot Silver & Copper Co., 244 U.S. 407, 412, 37 S.Ct. 609, 611, 61 L.Ed. 1229, 1231 (1917), which was a suit by minority stockholders complaining of depletion and depreciation of the assets of the corporation resulting in deprivation of a just and fair value of their right and interest and shareholders, held that "there is no sanctity in such a claim of constitutional right as prevents its being waived as any other claim of right may be." The Court reasoned that the appellants by their action in instituting a proceeding for valuation of their stock pursuant to the statutes in question, waived their right to assail the validity thereof (citing Great Falls Mfg. Co. v. Attorney General, 124 U.S. 581, 8 S.Ct. 631, 31 L.Ed. 527; Electric Company v. Dow, 166 U.S. 489, 17 S.Ct. 645, 41 L.Ed. 1088; Pierce v. Somerset Railway, 171 U.S. 641, 19 S.Ct. 64, 43 L.Ed. 316; Leonard v. Vicksburg, Shreveport and Pacific R. R. Co., 198 U.S. 416, 422, 25 S.Ct. 750, 49 L.Ed. 1108).

In Bartlett Trust Co. v. Elliott, 30 F. 2d 700, 705 (E.D.Mo.1929), the Court stated:

"Even the provisions of the Constitution are not always available to the litigant. A person may by his acts or omission to act waive a right which he might otherwise have under the Constitution of the United States. Provisions of a constitutional nature, intended for the protection of a property owner, may be waived by him when by a course of conduct it would be unjust to permit him to assert them * * * It must be deemed to have waived its rights, if any it had. It would be grossly unjust and inequitable to now grant the injunction sought (by the property owner)." 30 F.2d at 705.

In Ralston v. Cox, 123 F.2d 196 (C.A. 5, 1941), cert. den. 315 U.S. 796, 62 S. Ct. 488, 86 L.Ed. 1197 (1942), which was a habeas corpus proceeding against a United States Marshal for release from custody in which the appellant contended that he was entitled to the relief sought inasmuch as the action of the court in striking one count of the Indictment rendered null and void the trial verdict, sentence and commitment, the Court of Appeals for the Fifth Circuit, in holding that the appellant was not entitled to the relief requested inasmuch as the act done by the lower court was done at the request and insistence of the appellant, stated:

"If constitutional rights may be waived, as is well settled (cited cases omitted), they are also subject to the legal principles of estoppel * * * and he is now estopped to claim that jurisdiction was lost by an order induced by him, * * * *" 123 F.2d at 198.

In United States v. Benjamin, 120 F. 2d 521 (C.A.2, 1941), a case in which the defendant in his appearance before the Grand Jury stated that he was going to claim his constitutional rights to answer questions, nevertheless freely answered them without raising constitutional objections, the Court quoted from Wigmore, Evidence, 2nd Ed., Sec. 2268 as follows:

"As Professor Wigmore has said, the privilege (against self-incrimination) is 'an option of refusal and not a prohibition of inquiry'."

The California Supreme Court in Crest Catering Co. v. Superior Court,[76] in holding that a privilege against disclosure may be waived by a prior con-

---

76. 62 Cal.2d 274, 42 Cal.Rptr. 110, 398 P.2d 150 (1965).

tractual undertaking to furnish information upon request, stated:

"Crest contends that the foregoing provisions do not waive the privilege because there is no specific reference either to the code provisions creating the privilege or to the tax returns. A waiver does not depend upon meeting such a brittle requirement * *

"A waiver may occur (1) by an intentional relinquishment or (2) as 'the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished * * *' "

In view of the fact that the doctrines of equitable estoppel and waiver by written instrument and conduct have been recognized to result in the relinquishment of a constitutional right, a closer look should be taken at those cases which explain and elaborate upon these legal principles. In United States, for Use and Benefit of Noland Co. v. Wood,[77] an action by the United States for the use and benefit of a private corporation, against Wood and others to recover for materials furnished for the construction of a United States Post Office building, the Court stated on page 82:

"The doctrine of equitable estoppel is universally recognized by the courts * * * To establish equitable estoppel it is not necessary that actual fraud be shown. It is only necessary to show that the person estopped, by his statements or conduct, misled another to his prejudice."

* * * * * *

" * * * If one acts on the faith of another's position the latter is estopped from taking a different position to the detriment of the former (citing cases). Parties inducing another to act on reasonable belief that they have waived or will waive certain rights will be estopped to insist on

them to his prejudice. And estoppel may be predicated on representations not made with fraudulent intent, if they are of such a character as to induce the reasonably prudent man to believe that they were intended to be acted upon. (citing cases)"

In United States for Use and Benefit of Humble Oil and Refining Co. v. Fidelity & Casualty Co. of New York,[78] the Court of Appeals had the following to say concerning equitable estoppel:

"Equitable estoppel is a well-established concept invoked by courts to aid a party who, in good faith, has relied, to his detriment, upon the representations of another. A good statement of the rule, made with regard to litigation under the Miller Act, is found in McWaters and Bartlett v. United States, 272 F.2d 291, 296 (10 Cir., 1959), [in which the Court stated]:

'Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim was found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay.'

* * * * * *

'To establish equitable estoppel it is not necessary that actual fraud be shown. It is only necessary to show that the person estopped, by his statements or conduct, misled another to his prejudice * * *

* * * * * *

'A person is estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his

---

77.   99 F.2d 80 (C.A.4, 1938).

78.   402 F.2d 893, 897–899 (C.A.4, 1968).

position in good faith or such that a reasonable man would rely upon the representations made * * * Nor is an express promise to waive the statute of limitations necessary to estop a party from pleading the statute as a defense.' * * *

"In more recent authority, the Supreme Court has intimated that deception is not a necessary ingredient to estoppel. In Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), a case arising under the Federal Employers' Liability Act * * * The Supreme Court held * * * that plaintiff was 'justifiably misled into a good-faith belief that he could begin his action at any time within seven years after it had accrued.'

"Thus, we conclude that the absence of proof of fraud or deception on the part of Fidelity is not fatal to its being estopped to plead Miller Act limitations where, as we have shown, there has been a representation, reliance, change of position and detriment."

This Court agrees with the finding by the Mississippi Supreme Court and the contention of the respondents and intervenor herein that the case of Zap v. United States, *supra,* is applicable hereto. In *Zap,* the United States Supreme Court held that when the petitioner, in order to obtain a contract to do experimental work for the United States Navy, specifically agreed in writing to permit inspection of his accounts and records, he voluntarily waived his constitutional claims to privacy which he otherwise might have had with respect to business documents related to those contracts, and that a check seized by the Federal Bureau of Investigation in connection with this inspection was admissible in evidence. The Court did not, as contended by petitioner herein, rest its decision on or in any way refer to the "required business records" rule, but held that the appellant, Zap, had waived his constitutional rights to privacy or immunity. The Court stated:

"As we have pointed out in Davis v. United States, [328 U.S. 582, 66 S. Ct. 1256,] the law of searches and seizures as revealed in the decisions of this Court is the product of the interplay of the Fourth and Fifth Amendments. But those rights may be waived. And when petitioner, in order to obtain the government's business, specifically agreed to permit inspection of his accounts and records, he voluntarily waived such claim to privacy which he otherwise might have had as respects business documents related to those contracts * * * (328 U.S. at 628, 66 S.Ct. at 1279).

* * * * * *

" * * * the waiver of such rights to privacy and to immunity as petitioner had respecting this business undertaking for the government made admissible in evidence all the incriminating facts." (328 U.S. at 630, 66 S.Ct. at 1280).

The *Zap* case is cited as authority for the statement found in a recent text on Constitutional Law that "a person entitled to the privilege against self-incrimination can knowingly and voluntarily waive the privilege in advance of questioning by a valid contractual consent." [79]

This Court has carefully read the *Zap* opinion and finds that it is not confined to public contracts inasmuch as there is nothing therein to indicate that a different result would have been reached if the contract had been between private parties. Rather, the decision is determined upon the fact that there was a conscious, voluntary waiver through a promise made to obtain the contract. Certainly, the right of the government in this connection can be no greater than the right of the individual, and the constitutional waiver test can be no different in dealing with the government than it can be in dealing with another.

---

79. Antieau, Constitutional Law, Sec. 2:34, p. 193.

In Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958), a leading case dealing with the application of the privilege in civil cases, the defendant took the stand and testified on direct examination, but refused to answer relevant questions asked on cross examination, invoking the privilege against self-incrimination afforded by the Fifth Amendment. Although there was no express or intentional waiver of the privilege, the Supreme Court applied a rule of constructive waiver and rejected the claimed privilege. In doing so, the Court laid stress upon the injustice and unfairness to the other litigant and to the Court that would result if the defendant were permitted to invoke the privilege, and said:

> "The interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination * * *" 356 U.S. at 156, 78 S.Ct. at 627.

The Court thus emphasized the importance of the administration of justice between civil litigants as did the Mississippi Supreme Court in the following language:

> "Judgments and decrees are entitled to proper respect when rendered, and public policy requires nothing less. The citizenry of the state has the right to expect their orderly enforcement and surely the litigants, who have a direct personal or pecuniary interest in the outcome of the suit, have the basic right to demand the enforcement of the judicial process. The effectiveness of our entire court system rests upon the court's ability to enforce its judgments; otherwise they would become mere 'scraps of paper' evidencing only the good intentions of the court, and reducing its orders and attempted enforcement thereof to an exercise in futility * * *" (222 So. 2d at 832).

In the case sub judice we are not dealing with a simple routine commercial transaction between parties, as contended by the petitioner, nor is there in question any vague or unconscious promise. To the contrary, what we have is petitioner, an astute, experienced business man expressly, voluntarily, and specifically by letter adopting, and binding himself by, all of provisions and conditions of the application for the surety bond on the Shively, Kentucky project wherein he promised the surety therein and intervenor herein, U.S.F. & G., access to all of his books and records relating to the contract and agreed to furnish to it upon reasonable request current financial statements showing his financial position, as well as pledging all of his considerable assets to indemnify the surety in the event of loss, which actually did occur in excess of over two million dollars. There was certainly consideration for this promise and reliance thereon by the intervenor, U.S.F. & G. inasmuch as it would not have written this bond which gave rise to what the Mississippi Supreme Court found to be the equivalent of a fiduciary relationship, that of principal and surety, in the absence of Morgan's agreement. Thus, there was little doubt that the surety was entitled to be protected by his principal as voluntarily agreed, and that in reliance upon the promises to its subsequent detriment wrote the performance and payment bond.

Therefore, despite the presumption against waiver of constitutional privileges, which should be sparingly and cautiously applied, nevertheless, under the peculiar facts and circumstances of this case, this Court is of the opinion and finds that petitioner's constitutional privilege against self-incrimination afforded by the Fifth and Fourteenth Amendments was relinquished by his conduct which constituted a specific, deliberate and voluntary waiver and that he is, under the facts and circumstances hereof, estopped from claiming this privilege. To hold otherwise would be con-

trary to the established law, the equities of the situation and would be unconscionable.

 The provisions of the tenth paragraph of the application in question that "a representative of the sureties shall have access at all reasonable times and place to the books and records of the said applicants" and shall have the right "to examine the books, records, correspondence and bank accounts of applicants as they relate to said above mentioned contract" and that "applicants and any of them will furnish to sureties, upon request and at such reasonable intervals of time as sureties may designate, financial statements showing the current financial position of the applicant of whom such request or statement is made", in this Court's opinion, constituted an agreement to furnish not only the written financial statement which the Chancery Court and the Supreme Court of Mississippi by decree ordered the petitioner to furnish but also justifies the requirement that petitioner furnish the written statement concerning the identity, status, location and custody of his assets, particularly in view of the fact that Paragraph 15 of the application states that it "shall be liberally construed so as to protect and idemnify each of the sureties." In any event, if the Court is mistaken in this regard, it is perfectly clear that the financial statement must be furnished, and that petitioner's refusal to furnish it herein justifies his adjudication of civil contempt. It is well settled that partial invalidity of an order does not justify disregard of the valid parts thereof, and an alleged contemnor may question an order, which he is charged with disobeying, only insofar as he can show it to be void.[80]

This Court's previous order directing the release of the petitioner herein on bail shall be vacated and set aside, his petition filed herein for habeas corpus relief shall be dismissed with prejudice, and he shall be remanded to the custody of the appropriate Mississippi State authorities subject of course to his remaining at liberty if bail bond is furnished pursuant to Sec. 1152 of the Mississippi Code of 1942, Rec., pending his appeal to the Mississippi Supreme Court. Costs are to be assessed to the petitioner.

An Order conforming to the foregoing Findings of Fact and Conclusions of Law set forth in this Memorandum Opinion shall be presented to the Court within the time and in the form prescribed by the Rules of this Court.

---

80. 17 C.J.S. Contempt § 14, pp. 40–44.